Present:   All the Justices

MICHAEL H. KELLERMANN, ADMINISTRATOR OF THE ESTATE
OF JAIMEE ELIZABETH KELLERMANN, DECEASED
                                    OPINION BY
                            CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 081718              November 5, 2009[*]
PAUL MCDONOUGH, ET AL.

            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    Daniel T. Balfour, Judge


                              I.

     The primary question that we consider in this appeal is

whether adults who agree to supervise and care for a child owe

a duty to exercise reasonable care in the supervision and care

of that child.

                             II.

     Michael H. Kellermann, administrator of the estate of his

daughter, Jaimee Elizabeth Kellermann, filed a wrongful death

action against Paul McDonough and Paula McDonough (the

McDonoughs).  Kellermann alleged in the complaint that Paul

McDonough and Paula McDonough breached numerous duties owed to

Jaimee and as a result of such breaches Jaimee died.  The

McDonoughs filed a demurrer to the complaint asserting, among

other things, that they owed no duties in tort to Jaimee, a

14-year-old child under their supervision and care.  Even

_____

     [*] The prior opinion in this appeal issued July 17, 2009,
was withdrawn and a rehearing was granted by Order of the
Court dated September 16, 2009.


                               1

though the circuit court initially overruled the demurrer, the court subsequently sustained the demurrer and entered an order dismissing the complaint.  Kellermann appeals.

## III.

### A.

The purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted.  Tronfeld v. Nationwide Mutual Ins. Co., 272 Va. 709, 712-13, 636 S.E.2d 447, 449 (2006); Welding, Inc. v. Bland County Service Auth., 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001).  "A demurrer admits the truth of all properly pleaded material facts.  'All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading.  However, a demurrer does not admit the correctness of the pleader's conclusions of law.' "  Dodge v. Randolph-Macon Woman's College, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008) (citations omitted); accord Tronfeld, 272 Va. at 713, 636 S.E.2d at 449; Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 131-32, 575 S.E.2d 858, 861 (2003).  With these principles in mind, we will consider the litigants' arguments.

B.

Kellermann pled the following facts in his complaint that are relevant to our disposition of this appeal. Michael Kellermann and Elizabeth Kellermann (the Kellermanns) were the natural parents of Jaimee Kellermann. At the time of the events described in the complaint, they lived in Wake Forest, North Carolina.

In December 2004, the McDonoughs, husband and wife who resided in Henrico County, informed the Kellermanns that the McDonoughs' daughter, Becka McDonough, was "having a 'tough time of it.' " The McDonoughs told the Kellermanns that Becka's "outlook and mood" might improve if she spent time with her former classmate, Jaimee, who had moved from Henrico County with her family to North Carolina in 2002. The McDonoughs asked the Kellermanns if "Jaimee Kellermann could stay a night or two at the McDonoughs' home."

The Kellermanns agreed that Jaimee could spend one night with the McDonoughs and Becka. On Saturday, December 4, 2004, Michael Kellermann left his home with Jaimee and traveled 150 miles, approximately half the distance between their home in North Carolina and Richmond, Virginia, where they met Paula McDonough and Becka. "Michael Kellermann asked . . . Paula McDonough what activities were planned during Jaimee

Kellermann's stay at the McDonoughs' home. . . . Paula McDonough said that they planned to go to the new shopping mall. . . . Paula McDonough said that she would be taking the girls to the mall.  Michael Kellermann then said that Jaimee Kellermann was not to be driven by any inexperienced drivers. He then emphasized that his daughter was not to be in a car with any young, male drivers, stating 'no boys with cars.' The rule was intended for Jaimee Kellermann's safety and was a rule enforced by the Kellermanns at their home."  Paula McDonough agreed and said "'don't worry, I promise we'll take good care of her,' or words to that effect."  Paula McDonough returned to her home in Henrico County with Jaimee and Becka.

Later that day, Paula McDonough took Jaimee and Becka to a shopping mall and movie theater complex in Henrico County. Paula McDonough "dropped the girls off, and drove away, leaving them unsupervised."

Mary Madelyn Lane (Maddie) joined Becka and Jaimee at the shopping mall.  All the girls were 14 years old and were former classmates as well as best friends.  The girls planned to go to a movie theater.

Before the girls went to the movie theater, Nathan DeFrank (Nate), a 17-year-old boy who was Becka's friend, arrived at the shopping center in his car.  Nate had a reputation for reckless behavior.  Allegedly, Becka had "gone

4

street racing with [Nate]; Becka McDonough may have driven the car at times." Nate had been stopped by police officers previously because Nate had driven his car more than 20 miles per hour over the speed limit.

After meeting Nate, the girls attended a movie with Nate and another young male, Bruce MacConnell, who was 15 years old. After the movie concluded, Becka spoke, by telephone, with her mother, Paula McDonough. Becka either asked Paula McDonough if the girls could obtain a ride home with Nate, or Becka "informed . . . Paula McDonough that the girls were going to be driven [home] by [Nate]." Even though the Kellermanns had instructed Paula McDonough that their daughter, Jaimee, "was not to be driven by any non-adult drivers," Paula McDonough "purposefully instructed or otherwise permitted the girls to go home with [Nate] in his car."

Jaimee and Maddie did not want to ride in the car with Nate. After learning that Paula McDonough had directed the girls to obtain a ride home with Nate, Jaimee and Maddie "separated from Becka McDonough, [Nate], and Bruce." Jaimee and Maddie tried to contact, by telephone, Maddie's father, mother and brother. Jaimee and Maddie were unable to contact them. Jaimee and Maddie also tried to contact one other person, by telephone, but they were not successful.

5

Jaimee and Maddie reluctantly got into Nate's car about 10:00 p.m.  Nate began to "drive wildly."  "On a two-lane, winding road, [Nate] drove [his car] at speeds that at times approached or exceeded 80 miles per hour."  Jaimee and Maddie, "clutching each others['] hands in the back seat, begged [Nate] to slow down or to let them out.  At one point, while driving at or over 25 miles per hour, [Nate] opened his door and told Jaimee Kellermann and Maddie Lane they could get out of the moving car if they wished."

"Fearing for her life, Jaimee Kellermann sent a 'text message' to her father and a friend.  She said to her friend in real-time messages that: she wanted to go home, that she wanted to get away from the 'guys,' and that she feared she would 'die.'  She also said that 'they're planning on street racing.' "

As Nate drove his car, he approached oncoming "headlights in the distance.  [Nate] slammed on the brakes and pulled the hand brake.  [His] car skidded and the front end spun to the right side of the road, causing the rear left passenger side of the car, where Jaimee Kellermann was seated, [to leave the road and] slam into a tree.  The car recoiled off the tree and came to rest in the roadway.  The car left a skid mark 173 feet long, and a 'yaw mark' that measured 92 feet."  When Nate

lost control of his car, he was traveling at least 77 miles per hour.

Jaimee was transported by helicopter to the Virginia Commonwealth University Medical Center, where she died the next morning. Paula McDonough was informed of the car accident and she went to the hospital. She repeatedly told Maddie's parents "that she feared that she was 'going to be sued' for directing the girls to go in [Nate]'s car, which violated the Kellermann's clear instructions."

IV.

A.

Kellermann argues that he pled a cause of action in tort against the McDonoughs and that they owed a duty of care to Jaimee. Kellermann alleged that Jaimee was a 14-year-old minor; she was visiting the McDonoughs' home at their invitation; she was dependent upon the McDonoughs to make wise decisions about her care and safety; and the McDonoughs breached this duty of care. Responding, the McDonoughs argue that they owed no duty of care to Jaimee, and hence the circuit court properly sustained their demurrer. We disagree with the McDonoughs' argument.

We have stated that a "plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which

7

results in injury." Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000); accord Marshall v. Winston, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990); Fox v. Custis, 236 Va. 69, 73-74, 372 S.E.2d 373, 375 (1988); Chesapeake and Potomac Tel. Co. v. Dowdy, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988); Trimyer v. Norfolk Tallow Co., 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951).

The issue whether a legal duty in tort exists is a pure question of law. Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 106, 540 S.E.2d 134, 139 (2001); Burns v. Johnson, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995). If the allegations in a complaint are legally sufficient to establish the existence of a duty, then a jury, upon consideration of the evidence, must determine whether the duty has been performed. Yuzefovsky, 261 Va. at 106, 540 S.E.2d at 139; Acme Markets, Inc. v. Remschel, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943).

The gist of Kellermann's claim against the McDonoughs is that they had a common law duty to supervise and care for Jaimee, a 14-year-old child who was dependent upon the McDonoughs' care and supervision. We agree with Kellermann that he pled a common law cognizable cause of action in negligence against the McDonoughs. We hold that when a parent relinquishes the supervision and care of a child to an adult

8

who agrees to supervise and care for that child, the supervising adult must discharge that duty with reasonable care. However, such adult who agrees to supervise and care for a child upon the relinquishment of that care and supervision by the child's parent is not an insurer of the child's safety. Rather, the supervising adult must discharge his or her duties as a reasonably prudent person would under similar circumstances.

In this case, Kellermann pled sufficient facts that support the existence of this common law duty. As we have already stated, both Paula and Paul McDonough invited Jaimee to visit their family, and the McDonoughs knew Jaimee was a 14-year-old child. Kellermann alleged that Jaimee was in the care of the McDonoughs for approximately two days, that she was dependent upon their supervision and care, that they breached their duty to supervise and care for her, and that she died as a result of the McDonoughs' breaches of duty.

We note that our holding is consistent with the majority rule embraced by most states that have considered the issue whether an adult who agrees to supervise and care for a minor has a duty in tort to exercise reasonable care in the supervision of that minor. See e.g., Laite v. Baxter, 191 S.E.2d 531, 534 (Ga. Ct. App. 1972) (" 'measure of precaution which must be taken by one having a child in his care, who

9

stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances' ") (citation omitted); Putney v. Keith, 98 Ill. App. 285, 291 (Ill. App. Ct. 1901) ("that which is ordinary care as respects adults, may not be as regards children; nevertheless, as regards children as well as adults, the care of persons having no special relation to them, required by law, is that which prudent people exercise under like circumstances"); Hernandez v. Toney, 289 So. 2d 318, 320 (La. Ct. App. 1973) ("'[t]he general rule, however, is that a person who undertakes the control and supervision of a child has the duty to use reasonable care commensurate with the reasonably foreseeable risks of harm'"); Zalak v. Carroll, 205 N.E.2d 313, 313 (N.Y. 1965) ("[e]ven without compensation, when defendants undertook to control a young child and provide care for her, they became responsible for her injury through their negligence" and "were required to use reasonable care to protect the infant plaintiff from injury").

If this Court were to agree with the McDonoughs, that they do not owe a duty in tort to supervise and care for a child whose parents have relinquished such supervision and control to them, such holding would yield absurd results. For example, an adult who agreed to supervise and care for a group

10

of four-year-old children could permit the youngsters to play in a street at a dangerous and busy intersection, and yet that supervising adult would not be subject to tort liability for her negligent supervision and care. Additionally, under the McDonoughs' view of this case, an adult who agreed to baby-sit and care for a group of four-year-old boys in her home overnight could allow the boys to play with loaded pistols without being subject to any tort liability in the event one of the boys fired a pistol and killed another child.

B.

Kellermann argues that he pled sufficient facts in his complaint that would support a conclusion that Paul McDonough and Paula McDonough assumed a duty to Jaimee and that they were required to discharge that duty with reasonable care. Continuing, Kellermann asserts that the circuit court erred by sustaining the demurrer to his claim of assumption of a duty. Responding, the McDonoughs contend that Kellermann failed to plead a viable cause of action for assumption of a duty in tort by them. Additionally, Paul McDonough assigns as cross-error the circuit court's failure to sustain the demurrer filed on his behalf because the only allegations of alleged liability on his part regarding this claim involved the conduct of his wife.

11

This Court has recognized on many occasions that "[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Nolde Bros. v. Wray, 221 Va. 25, 28, 266 S.E.2d 882, 884 (1980) (quoting Glanzer v. Shepard, 135 N.E. 275, 276 (N.Y. 1922)). We recently restated this principle in Fruiterman v. Granata, 276 Va. 629, 645, 668 S.E.2d 127, 136 (2008) and Didato v. Strehler, 262 Va. 617, 628, 554 S.E.2d 42, 48 (2001). Accord Ring v. Poelman, 240 Va. 323, 326, 397 S.E.2d 824, 826 (1990); Cofield v. Nuckles, 239 Va. 186, 192, 387 S.E.2d 493, 496 (1990).

In Didato, we observed that the common law principle of assumption of a duty is embodied in the Restatement (Second) of Torts § 323:

> " 'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> "(a) his failure to exercise such care increases the risk of such harm, or
> "(b) the harm is suffered because of the other's reliance upon the undertaking.' "

Didato, 262 Va. at 629, 554 S.E.2d at 48.

Applying our well established jurisprudence, we hold that Kellermann pled a cause of action cognizable in tort against Paula McDonough on the theory that she assumed a duty to

12

Jaimee.  As we have already stated, Kellermann pled that he and his wife allowed their daughter, Jaimee, to spend a night at the McDonoughs' home in Henrico County.  Michael Kellermann specifically told Paula McDonough that Jaimee was "not to be driven by any inexperienced drivers" and he emphasized that Jaimee "was not to be in a car with any young, male drivers, stating 'no boys with cars.' "  Kellermann alleged that Paula McDonough agreed and said " 'don't worry, I promise we'll take good care of her,' or words to that effect."  Kellermann also alleged that Paula McDonough breached the duty that she assumed and, as a proximate cause of that breach, his daughter was killed in the car accident.  Hence, Kellermann pled that Paula McDonough undertook a duty to render services to Jaimee, that Paula McDonough breached this duty, and the breach was a proximate cause of Jaimee's injuries and death.

Kellermann, however, failed to plead a cause of action in tort based upon assumption of a duty against Paul McDonough.  The complaint contains no allegations that would permit the finder of fact to find that Paul McDonough assumed any duty of care to Jaimee.  Indeed, according to the allegations in the complaint, Paul McDonough was not present when Paula McDonough assumed the duty to exercise reasonable care to prevent Jaimee from riding in cars driven by inexperienced drivers or young male drivers.

13

Contrary to the assertion in Justice Kinser's concurrence and dissent, Kellermann repeatedly contended in the circuit court and in this Court that the McDonoughs owed a common law duty of care to his daughter, Jaimee. For example, Kellermann pled in his complaint that the McDonoughs "had a duty . . . to provide ordinary and reasonable care to Jaimee Kellermann. These duties included, but were not limited to, the obligation of the [McDonoughs] to exercise ordinary and reasonable care in transporting Jaimee Kellermann while she stayed at the McDonoughs' home." Additionally, Kellermann alleged that the McDonoughs were negligent in "failing to exercise ordinary and reasonable care or otherwise failing to reasonably provide for the safety of Jaimee Kellermann."

Kellermann also asserted in the circuit court that the McDonoughs "owed clear duties to Jaimee Kellermann, including the duty to provide her with safe transportation and adequate supervision." Additionally, during a hearing in the circuit court, Kellermann argued that the McDonoughs owed numerous duties to Jaimee, including a duty to care for her. Kellermann stated that the McDonoughs, "when they took [Jaimee] in, had a duty to ensure that if she got ill, she[] [would] be taken to a doctor, to feed her, to give her shelter, and to provide her safe transportation."

14

In this Court, Kellermann asserts in an assignment of error that the circuit court erred by sustaining the demurrer to his negligence claim because he pled sufficient facts that constituted a sufficient cause of action against the McDonoughs.  Kellermann also argues in his brief, filed in this Court, that an adult who accepts responsibility for the supervision of a child has a duty to exercise reasonable care.

Code § 8.01-384(A) states:

> "No party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court. No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order. Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal."

We recently discussed this statute this year in Helms v. Manspile, 277 Va. 1, 6, 671 S.E.2d 127, 129 (2009).  We stated in Helms that "[o]nce a litigant informs the circuit court of his or her legal argument, '[i]n order for a waiver to occur within the meaning of Code § 8.01-384(A), the record must affirmatively show that the party who has asserted an objection has abandoned the objection or has demonstrated by his conduct the intent to abandon that objection.' "  Id.

15

(quoting Shelton v. Commonwealth, 274 Va. 121, 127-28, 645 S.E.2d 914, 917 (2007)); accord King v. Commonwealth, 264 Va. 576, 581, 570 S.E.2d 863, 865-66 (2002); Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998). Based on the record, Kellermann raised the issue whether the McDonoughs owed a common law duty of care to Jaimee and Kellermann never waived this legal argument.

C.

Kellermann argues that the circuit court erred in sustaining the demurrer because the McDonoughs owed Jaimee a duty to exercise reasonable care in controlling the conduct of third parties to prevent her from harm. We disagree with Kellermann's contention.

We have consistently held that "generally a person does not have a duty to protect another from the conduct of third persons." Didato, 262 Va. at 629, 554 S.E.2d at 49; accord Taboada v. Daly Seven, Inc., 271 Va. 313, 322, 626 S.E.2d 428, 432 (2006); Delk, 259 Va. at 134-35, 523 S.E.2d at 832; A.H. v. Rockingham Publishing Co., 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998); Burdette v. Marks, 244 Va. 309, 311, 421 S.E.2d 419, 420 (1992). However, this general rule does not apply when a special relationship exists between a defendant and a plaintiff that gives rise to a right to protection to the plaintiff or between the defendant and third persons that

16

imposes a duty upon the defendant to control the conduct of the third person causing reasonably foreseeable danger to the plaintiff. Taboada, 271 Va. at 323-24, 626 S.E.2d at 432-33; Didato, 262 Va. at 630, 554 S.E.2d at 49; Delk, 259 Va. at 134-35, 523 S.E.2d at 832; A.H., 255 Va. at 220, 495 S.E.2d at 485; Burdette, 244 Va. at 312, 421 S.E.2d at 420.

Examples of special relationships that we have recognized between a defendant and a plaintiff include common carrier-passenger, business proprietor-invitee, innkeeper-guest, and employer-employee with regard to the employer's potential duty of protecting or warning an employee. Even though this list of relationships that give rise to a special relationship is not exhaustive, A.H., 255 Va. at 220, 495 S.E.2d at 485, we perceive of no reason to expand our jurisprudence regarding special relationships to include an adult who agrees to supervise and provide care to a minor. Therefore, we hold that the circuit court did not err when it sustained the demurrer on this basis.

In view of our holding that the Kellermanns have failed to establish a special relationship as we have defined this particular legal concept in our jurisprudence, proof of foreseeability in order to create a duty is not necessary. The duties that do exist in this case are a general duty of ordinary care and an assumed duty. And, as discussed in part

17

IV. D, _infra_, of this opinion, the Kellermanns must establish proximate causation in order to impose liability upon the McDonoughs.

D.

The McDonoughs argue that based upon the complaint, as a matter of law, Nate's "actions were the sole proximate cause of Jaimee Kellermann's death" and therefore, they could not be liable in tort to her. We disagree with the McDonoughs.

Generally, issues of negligence and proximate causation are questions of fact for the jury's determination. _Moses v. Southwestern Va. Transit Mgmt. Co._, 273 Va. 672, 679, 643 S.E.2d 156, 160 (2007); _Jenkins v. Payne_, 251 Va. 122, 128, 465 S.E.2d 795, 799 (1996); _Brown v. Koulizakis_, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985); _Armstrong v. Rose_, 170 Va. 190, 200, 196 S.E. 613, 616 (1938). "'The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred.'" _Beverly Enterprises-Virginia v. Nichols_, 247 Va. 264, 269, 441 S.E.2d 1, 4 (1994) (quoting _Coleman v. Blankenship Oil Corp._, 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980)); _accord_ _Williams v. Le_, 276 Va. 161, 167, 662 S.E.2d 73, 77 (2008); _Beale v. Jones_, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). There may be more than one proximate cause

18

of an event.  Williams, 276 Va. at 167, 662 S.E.2d at 77; Atkinson v. Scheer, 256 Va. 448, 454, 508 S.E.2d 68, 71 (1998); Panousos v. Allen, 245 Va. 60, 65, 425 S.E.2d 496, 499 (1993); Coleman, 221 Va. at 131, 267 S.E.2d at 147.  "A subsequent proximate cause may or may not relieve a defendant of liability for his negligence."  Williams, 276 Va. at 167, 662 S.E.2d at 77.

We have stated:

" 'In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury.' "

Atkinson, 256 Va. at 454, 508 S.E.2d at 71-72 (quoting Jenkins, 251 Va. at 129, 465 S.E.2d at 799) (emphasis omitted); accord Williams v. Joynes, 278 Va. 57, 63, 677 S.E.2d 261, 264 (2009); Panousos, 245 Va. at 65, 425 S.E.2d at 499; City of Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905).  We have emphasized that "a superseding cause of an injury 'constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury.' "  Jenkins, 251 Va. at 129, 465 S.E.2d at 799 (quoting Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966)); accord Joynes, 278 Va. at 63, 677 S.E.2d at 264; Atkinson, 256 Va. at 454, 508 S.E.2d at 72;

19

Dickenson v. Tabb, 208 Va. 184, 191, 156 S.E.2d 795, 801 (1967). We also note that:

> "[N]ot every intervening cause is a superseding cause. In order to relieve a defendant of liability for his negligence, negligence intervening between the defendant's negligence and the injury 'must so entirely supersede the operation of the defendant's negligence that it alone, without the defendant's [negligence contributing] thereto in the slightest degree, produces the injury.' Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905). Furthermore, an intervening cause is not a superseding cause if it was 'put into operation by the defendant's wrongful act or omission.' Jefferson Hospital, Inc. v. Van Lear, 186 Va. 74, 81, 41 S.E.2d 441, 444 (1947)."

Coleman, 221 Va. at 131, 267 S.E.2d at 147; accord Joynes, 278 Va. at 63, 677 S.E.2d at 264.

Based upon the above legal principles, if Kellermann presents evidence at a trial to prove the factual allegations in the complaint, and the jury finds that the McDonoughs breached their duty of care and supervision of Jaimee, a jury could also find that their breaches of duty constituted a proximate cause of Jaimee's death and that Nate's acts were not the sole proximate cause of her death. Additionally, if a jury finds that Paula McDonough assumed a duty to Jaimee to exercise reasonable care to provide safe transportation for Jaimee and to prevent her from riding in cars with young males and Paula McDonough breached that duty, the jury could also find that Paula McDonough's breach of that duty was a proximate cause of Jaimee's death.

20

V.

In conclusion, we hold as follows. Kellermann pled a cause of action for negligence against the McDonoughs because he alleged that they breached a common law duty in tort by failing to supervise and care for Jaimee when her parents relinquished supervision and care to the McDonoughs and the McDonoughs agreed to supervise and care for Jaimee. Kellermann also pled a viable cause of action against Paula McDonough on the basis that she assumed a duty to Jaimee. Kellermann failed to plead a cause of action based upon assumption of a duty against Paul McDonough and the circuit court erred by failing to sustain the demurrer on this basis. Paul McDonough and Paula McDonough did not have a special relationship with Jaimee and, therefore, they had no duty to protect her from the criminal acts of third parties based on this theory of negligence. Finally, Nate's acts did not constitute, as a matter of law, a superseding act between the McDonoughs' alleged negligent acts and Jaimee's death.

We will remand this proceeding to the circuit court for a trial on Kellermann's claims of assumption of a duty against Paula McDonough and breach of a common law tort duty of supervision and care against both McDonoughs.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

21

JUSTICE KOONTZ, with whom JUSTICE KINSER joins, concurring in part and dissenting in part.

I respectfully dissent. At its core, this case involves the tragic death of a fourteen year old child, Jaimee Elizabeth Kellermann, who died as a result of an automobile accident caused by the criminal acts of the juvenile operator of the vehicle in which she was a passenger during the time in which Jaimee was a social guest in the home of Paul and Paula McDonough, the parents of her friend Becka McDonough. Today, for the first time in this Commonwealth, a majority of this Court under these factual circumstances fashions a generalized common law duty upon a host parent to "supervise and care" for a child guest "when a parent relinquishes the supervision and care of [that] child to an adult who agrees to supervise and care for that child." In my view, the majority's characterization of this common law duty is too broad, both because in this case it is made applicable to the criminal acts of a third party not occurring on the premises of the host parent and also because it implicitly makes the host parent the virtual insurer of the guest child's safety despite the majority's disclaimer to the contrary.

Justice Kinser in her dissenting opinion in this case takes a persuasive view that the common law duty to supervise and care for Jaimee now fashioned by the majority in this case

22

is not a theory of liability before this Court in this appeal. Indeed, Justice Kinser correctly observes that the circuit court when ruling on the McDonoughs' demurrer specifically identified the issues to be resolved as those involving a "special relationship" from which a duty to protect Jaimee might arise and proximate cause. The theory of liability premised upon a special relationship upon which a duty to protect a person from the criminal acts of a third party can arise is distinctly different from a theory of liability premised upon the assumption of a specific duty to care and protect another. In this case, there is no dispute that Michael H. Kellermann, in his capacity as the administrator of Jaimee's estate, asserted both of these theories of liability against the McDonoughs. However, because the majority also addresses the theory of a common law duty and I cannot concur with the majority's analysis of that issue, I write separately here on that issue.

In Virginia, we adhere to the rule that "[g]enerally, a person does not have a duty to protect another from the conduct of third persons." Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000). While we have recognized a narrow exception to this general rule when a "special relationship" exists between the defendant and the plaintiff, see, e.g., Thompson v. Skate America, Inc., 261 Va.

23

121, 129, 540 S.E.2d 123, 127 (2001), in the present case neither the plaintiff nor the majority is able to cite to any prior decision of this Court which, in the absence of a finding of a special relationship, creates an exception to this general rule in the context of a guest child and host adult with regard to the criminal acts of a third person causing harm to the child. Additionally, it is notable that the cases relied upon by the majority provide little, if any, support for a holding that essentially creates a broad exception to this general rule.

Laite v. Baxter, 191 S.E.2d 531 (Ga. Ct. App. 1972), involved a twelve year old boy who died from injuries he received when he slipped and fell on wet rocks below a dam while he was on an outing as the guest of the parents of his friend. While recognizing a general rule that "a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury," the court stressed that such a person "is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm" to the child. Id. at 534. In finding no liability on the part of the supervising adult, the court reasoned that the danger of the wet rocks was open and obvious, that the child appreciated that danger and, thus, that the incident was "nothing more

24

than an accident, for which no one can be held [liable]." Id. at 536. Laite, unlike the present case, did not involve the criminal acts of a third party.

Putney v. Keith, 98 Ill. App. 285 (Ill. App. Ct. 1901), involved a two year old child who fell into a tub of hot water on the floor of the kitchen and died as a result of her injuries while a guest in the home of an adult who used the hot water for housecleaning purposes. In finding no liability on the part of the adult, the court reasoned that placing "tubs of hot water upon a floor of the kitchen, to which small children have access, for the purpose of cleaning the room, is an ordinary occurrence, and an act such as prudent people perform in the discharge of household duties." Id. at 290. Again, unlike the present case, Putney did not involve the criminal acts of a third party.

Zalak v. Carroll, 205 N.E.2d 313 (N.Y. 1965), involved a four year old child who was injured when a faulty swing set on the defendants' premises fell on her during the time the defendants had assumed the duty to care for the child while her mother was at work. Id. at 313. The court held that the defendants owed a duty to maintain their premises in a reasonably safe condition, and they had breached that duty. Id. Again, Zalak was a premises liability case and did not involve the criminal acts of a third party.

25

Finally, the majority cites Hernandez v. Toney, 289 So.2d 318 (La. Ct. App. 1973), which involved a young child who was injured when he left the fenced playground of the apartment complex in which he lived with his mother and was accidentally struck and injured by a car driven by a third person in a nearby parking lot. One of the defendants was the apartment manager who had ordered the child to leave the playground after observing the child throwing dirt in the face of the manager's child. The court reasoned that the manager "undertook control and supervision of [the child, and] assumed the duty to use reasonable care to protect the child from injury," and he "breached this duty by ordering [the child] from the fenced playground without escorting him the short distance to his home or notifying his mother that he was no longer in the playground." Id. at 321. The court further reasoned that the manager "could easily have foreseen the result of his action." Id. In Hernandez, the driver of the vehicle was not found to be negligent. Id. at 323. At best, Hernandez supports a finding of a duty of care when the supervising adult assumes a specific duty of care.

In the present case, the majority concludes that "we perceive of no reason to expand our jurisprudence regarding special relationships to include an adult who agrees to supervise and provide care to a minor." I agree and need not

26

unnecessarily lengthen this opinion by repeating the majority's citations to our prior cases that support this conclusion. However, it is to be noted that our prior cases make clear that it is the finding of a special relationship between a defendant and a plaintiff that gives rise to a duty upon the defendant to protect the plaintiff from the harmful acts of a third person, and that duty is an exception to the general rule that no such duty exists at common law. In this regard, we have cautioned that application of exceptions to this general rule "is always fact specific and, thus, not amenable to a bright-line rule for resolution." Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 106, 540 S.E.2d 134, 139 (2001). We have also cautioned that each particular factual circumstance must be carefully analyzed "to avoid permitting the narrow exception to swallow the general rule." Dudas v. Glenwood Golf Club, Inc., 261 Va. 133, 139, 540 S.E.2d 129, 132-33 (2001).

In this case it has been determined that no "special relationship" existed between Jaimee and the McDonoughs in her capacity as a guest in their home. Jaimee was fatally injured as a result of the criminal acts of a third person. Those acts did not occur on the premises or in the presence of the McDonoughs. Nor were those acts committed by a person under the control of the McDonoughs. Until today, under such

27

factual circumstances, our prior cases have not recognized an exception to the general rule that a person does not have a duty to protect another from the criminal acts of a third person.  In my view, to fashion a generalized, common law duty to "supervise and care" for a child guest, such as Jaimee, upon adult hosts, such as the McDonoughs, so as to impose potential liability upon the adult hosts for the criminal acts of a third party which harm the child under the circumstances of the present case effectively permits an exception to swallow the general rule.  Accordingly, I would hold that Kellermann did not plead a viable cause of action against the McDonoughs on the basis that they breached a duty in tort by failing to supervise and care for Jaimee.

It is a matter of common knowledge and experience that parents frequently invite friends of their children to visit in their homes as their guests for periods of time.  Certainly, such visits can be both enjoyable and beneficial to the children.  While the parents undoubtedly assume a degree of responsibility for the care and safety of the guest children during these visits, the parents, as recognized by the majority in this case, are not the insurers of these childrens' safety during the visits.  The duty to "supervise and care" fashioned by the majority in this case, however, is potentially broad enough to bring that proposition into

28

serious question.  I simply take this opportunity to assure host parents in this Commonwealth that the host parent in this case, Paula McDonough, assumed a specific duty not to permit her guest child to be transported by a juvenile driver and her potential liability for breaching that duty, if proven at trial, does not make her an insurer of the guest child's safety, and I am confident that the majority does not intend to suggest otherwise.

I respectfully concur with that portion of the majority's opinion holding that Kellermann failed to plead a viable cause of action against Paul and Paula McDonough on the basis that they had a special relationship with Jaimee and, therefore, they had a duty to protect her from the criminal acts of a third party.  I also concur with those portions of the opinion holding that Kellermann pled a viable cause of action against Paula, and not Paul, on the basis of assumption of a specific duty to Jaimee and that the acts of the third party did not constitute, as a matter of law, a superseding act between Paula's alleged negligence and Jaimee's death.

JUSTICE KINSER, concurring in part and dissenting in part.

The threshold question in any negligence case is whether the defendant owed a duty of care to the plaintiff.  Burns v. Johnson, 250 Va. 41, 44, 458 S.E.2d 448, 450 (1995).  The

majority addresses three sources of duty that it concludes are at issue in this appeal: (1) a common law duty to supervise and care for a minor child during a social visit; (2) an assumption of duty; and (3) a special relationship. Michael H. Kellermann, Administrator of the Estate of Jaimee Elizabeth Kellermann, has asserted, however, only two bases for liability, assumption of duty and special relationship, before both the circuit court and this Court. Without explanation, the majority is departing from the well-established principle that "an appellate court may not reverse a judgment of the trial court based upon an alleged error in a decision that was not made or upon an issue that was not presented." McDonald v. Commonwealth, 274 Va. 249, 255, 645 S.E.2d 918, 921 (2007). Thus, I respectfully disagree with the majority's conclusion that Kellermann pled a common law duty on the part of Paul and Paula McDonough to supervise and care for Jaimee during her visit with the McDonoughs. I concur in the majority's holding with regard to the theories of liability based on assumption of duty and special relationship. I will address each source of duty seriatim.

## I. COMMON LAW DUTY

To demonstrate why a common law duty to supervise and care for Jaimee is not a theory of liability before us in this appeal, I will first discuss the proceedings in the circuit court and Kellermann's arguments before that court, and then turn to his arguments in this Court.

In his wrongful death action, Kellermann alleged in the complaint that, by the McDonoughs' inviting Jaimee to their home for an overnight visit, "a special relationship of care and trust" existed between the McDonoughs and the Kellermanns. Kellermann claimed this special relationship gave rise to a "duty to warn the Kellermanns and/or protect Jaimee Kellermann from the danger of harm caused by the reasonably foreseeable wrongful acts of others."

Continuing, Kellermann asserted that since Paula "agree[d] to comply with the Kellermanns' directive" that Jaimee was not to be in a vehicle with a young male driver, the McDonoughs "were required to provide or otherwise ensure transportation by an experienced, responsible, and safe driver." Kellermann claimed "the McDonoughs failed to provide safe transportation" for Jaimee when "the Defendants, through Defendant Paula McDonough, knowingly, consciously, and purposefully instructed or otherwise permitted [Jaimee] to go home with [Nate] DeFrank in his car." Additionally,

31

Kellermann alleged that the McDonoughs agreed "to take Jaimee Kellermann into Defendants' care" and "promis[ed] Kellermann to provide Jaimee Kellermann with responsible, adult supervision."

Finally, Kellermann alleged that the McDonoughs were "negligent and/or grossly negligent . . . by failing to use ordinary and reasonable care in transporting [Jaimee] or otherwise providing for her safe transportation."  The McDonoughs' breach of these duties, according to Kellermann, was a proximate cause of Jaimee's death.[1]

In response to the complaint, the McDonoughs filed a demurrer, claiming, among other things, that Kellermann failed to state a cause of action because no duty extended from the McDonoughs to either Jaimee or her parents.  In response, Kellermann asserted a special relationship arose between Jaimee and the McDonoughs; "[c]onsequently, the McDonoughs willingly assumed a myriad of duties to Jaimee and her parents – among them to feed her, to take her to a doctor if she became ill, to drive her in a safe manner and to look out for her welfare like a parent would."  The circuit court denied the demurrer despite its "serious reservations as to whether a

---

[1] Kellermann also alleged breach of an express contract, breach of an implied contract, and breach of implied warranties. The circuit court sustained the demurrer as to these counts, and they are not before us in this appeal.

third party, as in this case, can be liable without more in a non-paid in <u>loco</u> <u>parentis</u> arrangement." The court concluded that the negligence claim could go forward if Kellermann could prove a special relationship existed between the McDonoughs and the Kellermanns.

After filing their answer to the complaint, the McDonoughs filed a motion to revive their demurrer and a motion for summary judgment. In support of both motions, the McDonoughs asserted that, as a matter of law, they owed no duty to protect Jaimee from the criminal acts of third parties on the night of the accident because no special relationship arose between the McDonoughs and Jaimee. They also claimed that their alleged negligent conduct was not a proximate cause of the accident and Jaimee's death. Finally, the McDonoughs asserted the complaint failed to allege sufficient facts to show that Paul had any involvement in the arrangements for Jaimee's visit or participated in the decision to allow the girls to ride in the vehicle driven by DeFrank.

Kellermann opposed the motions. He claimed that a special relationship did exist between the McDonoughs and Jaimee. Kellermann also asserted that the McDonoughs voluntarily "assumed a duty to care for and protect Jaimee Kellermann, including a duty to provide safe transportation for her."

33

In a letter opinion, the circuit court enumerated the issues before it:

1. Whether or not a "special relationship" exists between the [Kellermanns] and the Defendants.

2. If a special relationship existed, whether or not a duty was placed upon the Defendants while acting in loco parentis of the minor during the weekend visitation.

3. Generally, whether or not there is any basis for proximate cause of the accident by Defendants.

The circuit court concluded that "the law in Virginia does not recognize [a special] relationship creating a duty on the [McDonoughs] that would lead to [the] proximate cause of this accident." Thus, the court sustained the demurrer without addressing the remaining two issues.

In my view, it is clear from the pleadings, the parties' arguments, and the circuit court's findings that Kellermann never asserted or relied on a common law duty to supervise and care for a minor. The primary focus in the circuit court was on the issue concerning whether a special relationship existed between the McDonoughs and Jaimee. Kellermann also specifically argued the McDonoughs assumed a duty to care for and protect Jaimee. The common law duty addressed by the majority was not mentioned by anyone.

On appeal to this Court, Kellermann argues "the McDonoughs assumed willingly a myriad of duties to Jaimee –

34

among them, to feed her, to give her shelter in their house, to take her to a doctor . . . if she became ill, to drive her in a safe manner, to look out for her welfare, and to protect her from harm." Kellermann states the McDonoughs "voluntarily took upon themselves" responsibility for Jaimee and "assumed, temporarily, at the least the minimum duty to exercise ordinary care for [Jaimee's] safety." Kellermann also asserts additional duties on the part of the McDonoughs because a special relationship existed between them and Jaimee.

In support of his argument regarding assumption of duty, Kellermann cites this Court's decision in Didato v. Strehler, 262 Va. 617, 554 S.E.2d 42 (2001) and Restatement (Second) of Torts § 323. With regard to the issue of special relationship, Kellermann relies on many of this Court's decisions discussing special relationships that give rise to an affirmative duty to protect an individual from the reasonably foreseeable wrongful acts of a third party. See, e.g., Taboada v. Daly Seven, Inc., 271 Va. 313, 626 S.E.2d 428 (2006); Thompson v. Skate America, Inc., 261 Va. 121, 540 S.E.2d 123 (2001).

While I believe there can be no confusion about Kellermann's theories of liability, if there is any, he resolves it in his reply brief. There, Kellermann expressly refers to "the two bases for negligence liability in this

35

case."  Again relying on Didato and Restatement (Second) of Torts § 323, the first theory of liability, argues Kellermann, is based on the McDonoughs' own negligent conduct, which Kellermann describes as the McDonoughs' undertaking "to supervise and care for Jaimee during her weekend stay at their home (an obligation that they assumed voluntarily and had acted upon), including agreeing to provide safe transportation (free of boys with cars[])."  Continuing, Kellermann argues: "[The McDonoughs] failed to exercise reasonable care in that undertaking; this failure increased the risk of harm to Jaimee . . . and led to her tragic death.  This basis of liability comes from [the McDonoughs'] affirmative decision to put [Jaimee] into harm's way."  Then, Kellermann states: "The second basis for liability is founded on the well-recognized 'special relationship' exception to the rule that, generally, one does not have a duty to protect another from the wrongful conduct of a third person."

Nowhere before this Court has Kellermann relied on a theory of liability based on the common law duty used by the majority as the basis of its decision.  Even assuming Kellermann initially pled such a duty in his complaint, he has since waived it by failing to assert that legal position in the proceedings in the circuit court and now in this Court.  In any event, he affirmatively abandoned

36

any such theory in his reply brief when he specifically articulated only two bases for liability. The Court therefore cannot and should not reach the issue. Rule 5:17(c)(4); see McDonald, 274 Va. at 255, 645 S.E.2d at 921 ("the arguments of the parties on appeal . . . must be limited to issues preserved in the trial court . . . and to issues presented before the appellate courts[;] an appellate court may not reverse a judgment of the trial court based upon an alleged error in a decision that was not made or upon an issue that was not presented"); Shelton v. Commonwealth, 274 Va. 121, 127-28, 645 S.E.2d 914, 917 (2007) (waiver occurs if the record affirmatively shows a party has abandoned an objection or has demonstrated by conduct an intention to abandon the objection); Bunch v. Commonwealth, 225 Va. 423, 436, 304 S.E.2d 271, 278 (1983) (an issue not raised or ruled on by a trial court will not be noticed on appeal); Thrasher v. Thrasher, 210 Va. 624, 628-29, 172 S.E.2d 771, 774 (1970) (a question not raised in the trial court and upon which the record contains no evidence will not be considered on appeal); Allaun v. First & Merchs. Nat'l Bank of Richmond, 190 Va. 104, 113, 56 S.E.2d 83, 88 (1949) (a claim not decided by the trial court will not be addressed on appeal).

Therefore, I respectfully dissent from the majority's finding that Kellermann pled the existence of a common law duty to supervise and care for Jaimee.[2] I firmly believe that this Court's Rules must be applied consistently. Otherwise, our decisions become arbitrary.

## II. ASSUMPTION OF DUTY

Relying on this Court's decision in Didato and the Restatement (Second) of Torts § 323, Kellermann argues the McDonoughs undertook the responsibility to care for, supervise, and provide safe transportation for Jaimee during her overnight visit, thereby assuming a duty to exercise reasonable care in performing the undertaking. He further claims the McDonoughs failed to exercise reasonable care in

---

[2] In light of my conclusion on this issue, it is not necessary to address the majority's holding that "an adult who agrees to supervise and care for a minor has a duty in tort to exercise reasonable care in the supervision of that minor." I do, however, wholeheartedly agree with Justice Koontz' dissenting opinion regarding this common law duty. As Justice Koontz correctly explains, the cases upon which the majority relies, Laite v. Baxter, 191 S.E.2d 531, 534 (Ga. Ct. App. 1972); Putney v. Keith, 98 Ill. App. 285, 291 (Ill. App. Ct. 1901); Hernandez v. Toney, 289 So. 2d 318, 320 (La. Ct. App. 1973); Zalak v. Carroll, 205 N.E.2d 313, 313 (N.Y. 1965), did not involve a duty to supervise and care for a minor in the context of protecting that minor from the wrongful or negligent acts of a third party, which is the only duty allegedly breached by the McDonoughs in this case. Given the nature of the alleged breach, the majority is giving Kellermann the benefit of a common law duty to protect against the wrongful acts of a third party without the attendant restrictions concerning foreseeability that govern liability

38

carrying out that undertaking when they allowed Jaimee to ride in a vehicle driven by DeFrank and that such failure increased the risk of harm to Jaimee, leading to her death.

In Didato, the Court decided, among other things, whether the plaintiffs stated cognizable causes of action against the defendant healthcare providers on the theory that they had assumed a duty to exercise reasonable care in the communication of certain medical information to the plaintiffs even if no duty existed prior to the undertaking to render services. 262 Va. at 627-28, 554 S.E.2d at 47. The Court concluded "the plaintiffs pled sufficient facts which, if proven at trial, would permit the finder of fact to conclude that the defendants assumed the duty to convey to the plaintiffs the correct results of [a medical test]." Id. at 629, 554 S.E.2d at 48. The Court reiterated the legal principle that "'[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.'"[3] Id. at 628, 554 S.E.2d at 48 (quoting Nolde Bros., Inc. v. Wray, 221 Va. 25, 28, 266 S.E.2d 882, 884 (1980) (quoting Glanzer v.

based on a special relationship. A.H. v. Rockingham Publ'g Co., 255 Va. 216, 220-21, 495 S.E.2d 482, 485 (1998).

[3] This principle is often referred to as the "negligent undertaking doctrine" or the "Good Samaritan" rule. See Mukthar v. Latin Am. Sec. Serv., 42 Cal. Rptr. 3d 563, 566 (Cal. Ct. App. 2006).

39

Shepard, 135 N.E. 275, 276 (N.Y. 1922))); accord Fruiterman v. Granata, 276 Va. 629, 645, 668 S.E.2d 127, 136 (2008); Ring v. Poelman, 240 Va. 323, 326, 397 S.E.2d 824, 826 (1990); Cofield v. Nuckles, 239 Va. 186, 192, 387 S.E.2d 493, 496 (1990).

> Additionally, the Court referenced with approval Restatement (Second) of Torts § 323:
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a)  his failure to exercise such care increases the risk of such harm, or
>
> (b)  the harm is suffered because of the other's reliance upon the undertaking.

Didato, 262 Va. at 629, 554 S.E.2d at 48.

In Fruiterman, the Court further explained that, for an assumption of duty to occur in the physician-patient context, "a physician [must] personally engage[] in some affirmative act amounting to a render[ing of] services to another."  276 Va. at 646, 668 S.E.2d at 137 (internal quotations and citation omitted) (second and third alterations in original). Whether in a physician-patient context or some other circumstance, the threshold requirement for liability under the voluntary undertaking theory is that the defendant must specifically undertake to perform the task with which he or she is charged as having performed without reasonable care.

40

Temporomandibular Joint (TMJ) Implant Recipients v. Dow Chem. Co., 113 F.3d 1484, 1493 (8th Cir. 1997); Patentas v. United States, 687 F.2d 707, 716 (3rd Cir. 1982); Artiglio v. Corning Inc., 957 P.2d 1313, 1317 (Cal. 1998); Rogers v. Clark Equip. Co., 744 N.E.2d 364, 368-69 (Ill. App. Ct. 2001); Lather v. Berg, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988); South v. McCarter, 119 P.3d 1, 16-17 (Kan. 2005).[4]  Without the defendant's actual undertaking to render a service, there is no correlative duty to perform the undertaking with reasonable care.  See South, 119 P.3d at 17.  The extent of the undertaking defines the scope of a defendant's duty.  TMJ Implant Recipients, 113 F.3d at 1493; Margaret W. v. Kelley R., 42 Cal. Rptr. 3d 519, 536 (Cal. Ct. App. 2006); McGee v. Chalfant, 806 P.2d 980, 983 (Kan. 1991).

The Court has not previously defined the phrase "voluntary undertaking," nor has the Restatement (Second) of Torts.  One court, however, concluded "voluntarily undertaking a duty requires some sort of affirmative acknowledgment or recognition of the duty by the party who undertakes the duty;

---

[4] Some of these cases discuss Restatement (Second) of Torts § 324A instead of § 323.  While the sections state somewhat different rules, both pertain to a person who voluntarily undertakes to render services to another and provide that a person may be liable for failing to take reasonable care in performing the undertaking.  See Browne v. Turner Constr. Co., 26 Cal. Rptr. 3d 433, 443 & n.4 (Cal. Ct. App. 2005).

in other words, there must be a showing of the party's intent to undertake the duty."  Rogers, 744 N.E.2d at 368-69. Another court stated, "the term 'undertaking' is potentially somewhat ambiguous, since it may refer either to a promise that one will do a thing, or to an actual endeavor or setting-out to do the thing."  Browne v. Turner Constr. Co., 26 Cal. Rptr. 3d 433, 443 n.5 (Cal. Ct. App. 2005); see also Restatement (Second) of Torts, § 323, caveat (expressing no opinion whether "the making of a contract, or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability").  I therefore conclude, as indicated in Fruiterman, 276 Va. at 646, 668 S.E.2d at 137, that, in order to have a voluntary undertaking, a party must engage in an affirmative act that amounts to a rendering of services to another and demonstrates the party's intent to undertake a duty.

Although Kellermann argues that the McDonoughs undertook the responsibility to care for, supervise, and provide safe transportation for Jaimee during her overnight visit, his factual allegations concerning the alleged undertaking are not so broad in scope.  Kellermann specifically alleged that, when he asked Paula about what activities were planned during Jaimee's visit, he told Paula that Jaimee was not "to be driven by any inexperienced drivers" and "emphasized that his

42

daughter was not to be in a car with any young, male drivers, stating 'no boys with cars.' " According to Kellermann, Paula "agreed," and said, " '[D]on't worry, I promise we'll take good care of her.' "

Accepting these allegations as true, see Taboada, 271 Va. at 317, 626 S.E.2d at 429, I conclude that Paula, by agreeing to comply with Kellermann's directive that Jaimee not be allowed to ride in a vehicle driven by an inexperienced and/or young male driver, and then taking Jaimee with her and her daughter, Becca McDonough,[5] to Henrico County for the overnight visit, engaged in an affirmative act that amounted to the rendering of a service to Jaimee and demonstrated Paula's intent to assume a duty to protect Jaimee from inexperienced and/or young male drivers. See Keenan v. Miriam Found., 784 S.W.2d 298, 304 (Mo. Ct. App. 1990) (holding the defendant assumed a duty to protect the plaintiff from attacks by third persons as the defendant's employee assured the plaintiff someone would be present and would help her unload her donated merchandise because the plaintiff was reluctant to go to the rear of the shop alone due to the character of the neighborhood).

---

[5] Although Kellermann initially spelled her name "Becka" in his pleadings below, he has conformed his spelling of Becca to the McDonoughs' spelling of their daughter's name in the briefs before this Court.

43

By this conclusion, I am not suggesting that any time a parent invites his or her child's friend for a social visit and assures the friend's parents that the friend will be supervised and cared for, that parent has voluntarily undertaken to protect the child from the wrongful acts of third persons and thereby assumed a duty of care. My conclusion in the case before us is based on the particular allegations in the complaint, which if proven at trial, would sustain a factfinder's determination that Paula voluntarily and affirmatively undertook to protect Jaimee from a very specific risk of harm, i.e., the risk of harm associated with riding in a vehicle driven by an inexperienced and/or young male driver. The scope of her undertaking was narrow and defined the extent of her duty to exercise due care in performing the undertaking. See South, 119 P.3d at 16 ("The extent of the undertaking defines the scope of the duty."). Thus, I concur with the majority in this regard and conclude that Kellermann stated a cause of action against Paula based on the theory of assumption of duty.

> I also concur with the majority's decision as to Paul. As the McDonoughs assert in their assignment of cross-error, the complaint contains no factual allegations that Paul engaged in any undertaking to protect Jaimee from inexperienced and/or young male drivers. He was not present when Paula met Kellermann halfway between their respective homes and was not a party to the conversation when Paula agreed to Kellermann's directive regarding Jaimee. Paul's knowledge of and assent to Jaimee's

44

overnight visit were not affirmative acts amounting to the rendering of a service to Jaimee and did not demonstrate any intent by Paul to undertake a duty to protect.  Thus, I conclude that Kellermann did not state a cause of action with regard to Paul.

Before addressing the issue of special relationship, I find it appropriate at this juncture to turn to the McDonoughs' remaining assignment of cross-error.  Relying on Robinson v. Matt Mary Moran, Inc., 259 Va. 412, 525 S.E.2d 559 (2000), and Turner v. Lotts, 244 Va. 554, 422 S.E.2d 765 (1992), the McDonoughs contend Paula's decision granting permission for Jaimee to ride in the vehicle driven by DeFrank was not a proximate cause of Jaimee's death.  In response, Kellermann asserts the issue of proximate cause is generally a question of fact for the jury to decide.  I agree with Kellermann.

In Robinson, this Court held that the act of selling alcoholic beverages, even to an intoxicated person under the age of 21, is "too remote to be a proximate cause of an injury to a third party resulting from the negligent conduct of the purchaser of the beverages."  259 Va. at 417, 525 S.E.2d at 562; accord Williamson v. The Old Brogue, Inc., 232 Va. 350, 353, 350 S.E.2d 621, 623 (1986).  Thus, the plaintiff's pleading in that case was insufficient as a matter of law because the defendant's act of serving alcohol to an individual who subsequently drove an automobile negligently,

resulting in an accident, was not a proximate cause of the passenger's death.  Robinson, 259 Va. at 417, 525 S.E.2d at 562.

Likewise in Turner, which involved a claim against two parents for the alleged negligent entrustment of an automobile to their son, the Court stated that "the plaintiff must prove that the negligent entrustment of the motor vehicle to the tortfeasor was a proximate cause of the accident."  244 Va. at 557, 422 S.E.2d at 767 (citations omitted).  This Court concluded that there was no allegation that the son's "conduct in prior accidents was negligent or that his accident with [the plaintiff] was a proximate cause of similar negligence."  Id. at 558, 422 S.E.2d at 768.

Neither of these cases is analogous to the factual scenario presented in the case before us.  According to the allegations in Kellermann's complaint, Paula undertook the responsibility to protect Jaimee from the specific danger associated with riding in a vehicle operated by an inexperienced and/or a young male driver.  Paula allegedly failed to perform that particular undertaking with due care.  Thus, I cannot say in this context that Paula's decision allowing Jaimee to ride in the vehicle driven by DeFrank is too remote, as a matter of law, to constitute a proximate cause of Jaimee's death.

46

A proximate cause of an event is that "act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970); accord Jenkins v. Payne, 251 Va. 122, 128, 465 S.E.2d 795, 799 (1996); Banks v. City of Richmond, 232 Va. 130, 135, 348 S.E.2d 280, 282 (1986). Generally, the issue of proximate causation is a question of fact to be resolved by a jury. Jenkins, 251 Va. at 128, 465 S.E.2d at 799 (citing Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985)). In this case, it is a question for the jury to decide. Thus, I concur with the majority in holding the circuit court did not err by failing to sustain the demurrer on this basis.

## III. SPECIAL RELATIONSHIP

Kellermann argues that, based on the particular facts of this case, a special relationship existed between the McDonoughs and Jaimee because the McDonoughs invited Jaimee to their home for an overnight visit and undertook the responsibility of caring for and supervising her. Thus, according to Kellermann, this special relationship gave rise to an affirmative duty to protect Jaimee from the reasonably foreseeable wrongful acts of third persons. The McDonoughs counter that, while this Court has recognized certain

47

categories of special relationships, such as business invitor/invitee, innkeeper/guest, common carrier/passenger, and employer/employee, the "social host/sleepover" situation alleged here is not a recognized special relationship.

"Generally, a person does not have a duty to protect another from the conduct of third persons." Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000). There is, however, an exception to this general rule "when a special relationship exists (1) between the defendant and the plaintiff which gives rise to a right to protection to the plaintiff, or (2) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct." Id. at 132, 523 S.E.2d at 830-31; see also Restatement (Second) of Torts § 315. We have recognized that a special relationship may exist between a particular plaintiff and defendant "either as a matter of law or because of the particular factual circumstances in a given case, which may give rise to a duty of care on the part of the defendant to warn and/or protect the plaintiff against the danger of harm from the reasonably foreseeable criminal acts committed by a third person." Thompson, 261 Va. at 129, 540 S.E.2d at 127. In that regard, the "special relationships that may create a duty of care include those of common carrier and passenger, business proprietor and invitee, innkeeper and

guest, and employer and employee." Yuzefovsky v. St. John's Wood Apts., 261 Va. 97, 108, 540 S.E.2d 134, 140 (2001); see also A.H. v. Rockingham Publ'g Co., 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998).  This list, however, is not exclusive and the determination whether a special relationship exists is fact-specific.  See Yuzefovsky, 261 Va. at 108, 540 S.E.2d at 140.

Because the imposition of a duty of care to warn and/or protect a plaintiff from the reasonably foreseeable danger of harm from the criminal acts of a third party is an exception to the general tort rule, the Court must carefully analyze each particular fact pattern so as "to avoid permitting the narrow exception to swallow the general rule." Dudas v. Glenwood Golf Club, Inc., 261 Va. 133, 139, 540 S.E.2d 129, 132-33 (2001).  Additionally, " 'in determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must be taken into account. Imposition of a duty does not depend upon foreseeability alone.' " Gulf Reston, Inc. v. Rogers, 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974) (quoting Trice v. Chicago Housing Auth., 302 N.E.2d 207, 209 (Ill. App. Ct. 1973)); accord Wright v. Webb, 234 Va. 527, 531, 362 S.E.2d 919, 921 (1987).

Aside from the traditional type of special relationships that the Court has recognized, see Taboada, 271 Va. at 326, 626 S.E.2d at 434 (innkeeper/guest); Thompson, 261 Va. at 129, 540 S.E.2d at 127 (business invitor/invitee); A.H., 255 Va. at 220, 495 S.E.2d at 485 (employer/employee); Hines v. Garrett, 131 Va. 125, 137, 108 S.E. 690, 693-94 (1921) (common carrier/passenger), the Court has, in only two instances, found that a special relationship existed between a defendant and a plaintiff that gave rise to a duty to protect based on the particular factual scenario presented.[6]  In the first case, Burdette v. Marks, 244 Va. 309, 311, 421 S.E.2d 419, 420 (1992), a deputy sheriff failed to render assistance to and/or protect a citizen who was being assaulted by a third person even when the citizen asked for help.  The deputy sheriff knew the assailant and the victim and witnessed part of a first attack and all of a second attack.  Id.

The issue before this Court was twofold: (1) whether a special relationship existed between the deputy sheriff and the victim that "gave rise to a special duty" on the part of the deputy sheriff to protect the victim; and (2) whether the

_____

[6] The Court, however, also held that a special relationship may arise between a defendant and a third party by the defendant's taking charge of the third party, which therefore creates a duty to control the third party's conduct. See, e.g., Dudley v. Offender Aid & Restoration of Richmond, Inc., 241 Va. 270, 279-80, 401 S.E.2d 878, 883 (1991).

50

deputy sheriff "reasonably could have foreseen that he would be expected to take affirmative action to protect" the citizen from harm. Id. at 312, 421 S.E.2d at 421. Because the deputy sheriff was on duty at the time, the Court concluded it could be reasonably inferred that he was armed and possessed the capabilities to subdue the assailant. Based on the particular facts alleged, the Court held that "a special relation existed between [the deputy sheriff and the citizen] which imposed a duty upon [the deputy sheriff] to render assistance to [the citizen]." Id. The Court further held that the case "falls within one of the exceptions to the general rule [and] that, under the facts alleged, [the deputy sheriff] owed a legal duty to protect [the citizen] from [the assailant's] attack." Id. at 313, 421 S.E.2d at 421.

In the second case, the plaintiff, who was a patient at a psychiatric facility, alleged that another patient entered her room and sexually assaulted her. Delk, 259 Va. at 130, 523 S.E.2d at 829-30. The plaintiff further alleged that the defendants knew she was a danger to herself and others, was in constant need of 24-hour supervision, had a history of psychiatric problems associated with prior sexual assaults, and was deemed a high risk to herself and others. Id. at 130, 523 S.E.2d at 829. Based on those allegations, the Court held the plaintiff pled sufficient facts to establish a special

relationship between herself and the psychiatric facility that would give rise to a duty on the part of the defendants to protect the plaintiff from third persons.[7] See id. at 134, 523 S.E.2d at 831.

In contrast, the Court held in Holles v. Sunrise Terrace, Inc., 257 Va. 131, 137, 509 S.E.2d 494, 498 (1999), that a special relationship did not exist between a resident on an "independent living" floor of an adult care residence center and the defendant company that provided food and management services, including security, for the center. The plaintiff was robbed and raped by an intruder who gained entry into the building by waiting until a side door was opened from within and then walking through the open doorway past the person who had opened the door. Id. at 134, 509 S.E.2d at 496. The Court concluded the defendant did not have a special relationship with the plaintiff "because there was no right of protection inherent in their relationship separate and apart from any duties imposed" by the defendant's contract with the

---

[7] The Court also concluded that the plaintiff pled sufficient facts to create a jury issue as to whether the assault was reasonably foreseeable and to show that the defendants had taken charge of the assailant because he was in the acute care wing of the psychiatric facility but failed to control him. Delk, 259 Va. at 135, 523 S.E.2d at 832.

local county to manage the center.[8]  Id. at 137, 509 S.E.2d at 498.

In Burdette and Delk, as opposed to Holles, a duty of protection from the criminal acts of third persons was inherent in the particular relationship between the plaintiff and the defendant.  In Burdette, an on-duty deputy sheriff witnessed an attack upon a citizen by a third person.  244 Va. at 312, 421 S.E.2d at 421.  Likewise in Delk, the plaintiff was a patient at a psychiatric facility, was a danger to herself and others, had a history of psychiatric problems related to sexual assaults upon her, and needed constant 24-hour supervision.  See 259 Va. at 130, 523 S.E.2d at 829.  In both instances, the defendants were necessarily equipped to protect against the criminal acts of third persons.  Thus, the magnitude of the burden of providing the protection and the consequences of placing that burden on the defendant was not

_____

[8] The Court has also held in several cases that there was not a special relationship between a landlord and a tenant as to give rise to a duty on the part of the landlord to protect a tenant from the criminal acts of third persons.  See Yuzefovsky, 261 Va. at 108, 540 S.E.2d at 140; Klingbeil Mgmt. Group Co. v. Vito, 233 Va. 445, 447, 357 S.E.2d 200, 201 (1987); Gulf Reston, 215 Va. at 157, 207 S.E.2d at 844.  In denying the existence of a special relationship, we noted that a landlord is not an insurer of a tenant's safety, Yuzefovsky, 261 Va. at 108, 540 S.E.2d at 140; Dudas, 261 Va. at 141, 540 S.E.2d at 133-34; Gulf Reston, 215 Va. at 159-60, 207 S.E.2d at 845, and does not have a "duty to act as a policeman," Klingbeil, 233 Va. at 447, 357 S.E.2d at 201.

unfair or unreasonable given the particular facts presented in each case.

Based on our prior cases and the factual scenario presented here, I concur with the majority's holding that a special relationship did not exist between the McDonoughs and Jaimee. Jaimee was a social guest in the McDonoughs' home. A duty to protect Jaimee from the wrongful acts of third persons is not inherent in that relationship as it was in Burdette and Delk. The magnitude of the burden to provide such protection and the consequences of placing that burden on the McDonoughs are too great.

Parents routinely invite their children's friends into their homes for social visits. When doing so, they do not become insurers of the friends' safety, especially against the wrongful acts of third persons. To hold otherwise would indeed stretch the exception of the special relationship beyond the limits of the rule itself. I therefore conclude the circuit court did not err in finding that a special relationship did not exist between the McDonoughs and Jaimee.[9]

_____

[9] Kellermann relies on the decisions in Doe v. Bruton Parish Church, Law No. 7977 (City of Williamsburg and James City County, July 10, 1997) and Schieszler v. Ferrum Coll., 236 F. Supp. 2d 602 (W.D. Va. 2002), in support of his assertion that a special relationship existed between the McDonoughs and Jaimee. Those cases are not analogous to the present case and do not persuade me to a contrary conclusion.

For these reasons, I respectfully dissent from that portion of the majority's opinion holding that Kellermann pled a common law duty on the part of the McDonoughs to supervise and care for Jaimee during her visit. I respectfully concur with the other portions of the majority's opinion. Thus, I would reverse the circuit court's judgment sustaining the demurrer with regard to the cause of action against Paula McDonough on the theory of assumption of duty and remand for further proceedings. I would otherwise affirm the circuit court's judgment.