## CIRCUIT COURT OF FAIRFAX COUNTY

Thomas Bosworth,
Personal Representative
of the Estate of
Barbara Jean Bosworth,
deceased

v.

Vornado Realty, L.P., et al.

December 20, 2010

Case No. CL-2010-11031

BY JUDGE CHARLES J. MAXFIELD

Defendants Securitas Security Services USA, Inc., and Securitas Services, Inc. (collectively, "Securitas") demur to the three counts against them. Defendant Securitas, Inc., was dismissed from the case on August 31, 2010, pursuant to a nonsuit order, and Defendants Securitas Group and Securitas Holdings, Inc., are not party to the demurrer. Following oral argument and briefing of the parties, the case was taken under advisement. For the reasons that follow, the Demurrer is sustained with leave to amend within twenty-one days.

### Alleged Facts

This case arises from the abduction of Barbara Bosworth on September 13, 2008, from the parking garage of the Springfield Mall ("Mall") in Springfield, Virginia. The Mall is alleged to be a "magnet for criminal

activity," with hundreds of reported incidents in the four years preceding the abduction. (Compl. ¶ 7; *see also id.* ¶¶ 8, 9, 26.) By way of example, Plaintiff alleges ten robberies between December 2006 and August 2008, in addition to various other crimes against persons and property. (Compl. ¶ 7.)

At the time of Mrs. Bosworth's abduction, Securitas, a private company, was under contract with the Mall to provide security services for the Mall's common areas, including the parking garage. Plaintiff alleges that the abductors are depicted in "at least two frames" of surveillance video as "brandishing" a replica handgun in the parking garage and that security personnel did not respond or otherwise confront them. (Compl. ¶ 13.) The abduction itself was not filmed. Plaintiff does not allege that any security personnel interacted with Mrs. Bosworth or the abductors or witnessed the abduction.

Mrs. Bosworth was taken from the Mall parking garage to a PDQ Mart convenience store in Woodbridge, Virginia. There, her abductors forced her to purchase two six-packs of beer and, later, withdraw money from an ATM. Mrs. Bosworth was ultimately killed when her abductors lost control of the car they were driving.

On August 3, 2010, Thomas Bosworth, as personal representative of his wife's estate, filed a complaint against twenty-one defendants, including the Mall, Securitas, the PDQ Mart, and the owners and managers of each. The gravamen of the Complaint is the allegation that the defendants failed to take adequate measures to protect Mrs. Bosworth.

Securitas demurs to Count I: Negligence; Count II: Breach of Contract Obligations to a Third-Party Invitee; and Count V: Negligence Following Voluntary Assumption of Duty. Specifically, Securitas contends it owed no duty, nor assumed a duty, to protect Mrs. Bosworth from the criminal acts of third parties. In addition, Securitas claims that Plaintiff failed to state a cause of action for breach of contract because there is "no allegation that the Mall entered into a contract with Securitas with the specific intent of conferring a direct benefit on Mrs. Bosworth." (Demurrer 4.)

*Analysis*

*Counts I and V: Negligence*

Whether a duty of care exists in a negligence action is a pure question of law. *Fox v. Custis*, 236 Va. 69, 74, 372 S.E.2d 373, 375 (1988). Here, as a matter of law, the facts pleaded are insufficient to justify the imposition of a duty on Securitas to protect Mrs. Bosworth from the criminal acts of third parties.

## Count I: Negligence

In Virginia, there is generally no duty to aid or protect another person from a third person's willful act of violence absent some "special relationship" between the defendant and the plaintiff or the third person. *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136, 509 S.E.2d. 494, 497 (1999). "The necessary special relationship may be one that has been recognized as a matter of law . . . or it may arise from the factual circumstances of a particular case." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 107, 540 S.E.2d 134, 139 (2001). Special relationships by matter of law (*"de jure* special relationships") include "common carrier and passenger, business proprietor and invitee, innkeeper and guest, and employer and employee." *Id.* at 108, 540 S.E.2d at 140. As Plaintiff has not alleged facts that give rise to a *de jure* special relationship (i.e., Securitas is an independent contractor and Mrs. Bosworth is a business invitee), the issue before this court is whether Securitas and Mrs. Bosworth were parties to a *de facto* special relationship.

The Virginia Supreme Court has imposed liability pursuant to a *de facto* special relationship in only two cases: *Burdette v. Marks*, 244 Va. 309, 312-13, 421 S.E.2d 419, 421 (1992), and *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 134, 523 S.E.2d 826, 831-32 (2000). In *Burdette*, an on-duty and uniformed deputy sheriff arrived at the scene of a car accident to find a man beating Burdette with his fists and a shovel (the first attack) and then with an iron pipe (the second attack). 244 Va. at 310, 421 S.E.2d at 420. During the second attack, Burdette was carrying his three-year-old son. *Id.* The deputy witnessed part of the first attack and all of the second. *Id.* at 311, 421 S.E.2d at 420. He did nothing to assist Burdette, despite knowing both parties and their propensities, knowing that Burdette "was in distress" and "being seriously injured," and having been asked for help by Burdette. *Id.* The Virginia Supreme Court held that a special relationship existed between Burdette and the deputy sheriff which imposed a duty on the deputy to "take affirmative action to protect Burdette from harm." *Id.* at 312, 421 S.E.2d at 421.

Likewise, in *Delk*, the Court found facts sufficient to give rise to a special relationship, this time between a patient of a psychiatric center and the facility. Delk, the patient, was raped by another patient of the facility. At the time of the assault, Delk was considered a high-risk to herself and others due to long-standing psychological problems stemming from numerous prior sexual assaults. 259 Va. at 130, 523 S.E.2d at 829. She was subject to constant 24-hour supervision by facility personnel. *Id.* Immediately prior to the assault, nurses observed and documented an unauthorized adult male in Delk's room but did not respond. *Id.* at 130, 523 S.E.2d at 830. Delk also alleged that hospital staff were aware of her specific vulnerabilities and the "assailant's troubled history, predispositions, disturbing interaction with

other patients, and medical conditions," but still did nothing to prohibit his unaccompanied entry into her room. *Id.* at 131, 523 S.E.2d at 830. Based on these facts, the Virginia Supreme Court held that Delk had pleaded "sufficient allegations which, if proven, would establish the existence of a special relationship between her and the [psychiatric facility] and, thus, give rise to a duty on the part of the defendants to protect her from third persons." *Id.* at 132, 523 S.E.2d at 831.

In both cases, the defendants had specific knowledge about the plaintiff and/or assailant. The Defendants also had notice or actual knowledge of the criminal act immediately prior to or as it was occurring. Accordingly, the obligation to take affirmative action was foreseeable and gave rise to duties of protection, which were violated by the defendants' egregious failures to act.

Although the Virginia Supreme Court acknowledges that other categories of special relationships may exist, the Court has emphasized that any special relationship must have the "essential characteristic . . . that it provides a right of protection to a plaintiff by a defendant from the criminal acts of third persons that can be reasonably foreseen or anticipated." *Holles*, 257 Va. at 136, 509 S.E.2d at 498; *Burdette*, 244 Va. at 312, 421 S.E.2d at 421. Notably, however, the Court has "rarely found the circumstances of the cases under review to warrant the application of [the special relationship] exceptions." *Yuzefovsky*, 261 Va. at 106, 540 S.E.2d at 139.

For example, in *Holles*, the Virginia Supreme Court declined to find a *de facto* special relationship between a management company and a resident of an assisted living center. 257 Va. at 137, 509 S.E.2d at 498. The resident was robbed and raped by an intruder who entered through the center's side door as someone was exiting the building. The administratrix for the resident's estate alleged that the management company was negligent in allowing the intruder to gain entrance to the facility. The Court, however, held that there was "no right of protection inherent in their relationship separate and apart from any duties imposed by Sunrise's contract." *Id.* In so holding, the Court emphasized that the resident lived on the "independent living" floor of the Center, where residents were "capable of performing all activities of daily living without assistance from the facility's staff." *Id.* at 133, 509 S.E.2d at 496. Such emphasis distinguished the resident from others in the facility who received assistance with most daily activities. *Id.* at 133, 509 S.E.2d at 496. The emphasis also distinguishes the resident from the constantly-supervised plaintiff in *Delk*.

Plaintiff contends that *Holles* is dissimilar to the case at hand because security was not the preeminent purpose of the management company's contract with the assisted living center, as it was for the contract between Securitas and the Mall. While the facts may be distinguishable to that extent, *Holles* remains instructive when compared to *Burdette* and *Delk*. Unlike those cases, the plaintiff in *Holles* did not allege that the management

company knew the assailant or had any special knowledge about the resident that would give rise to an inherent right of protection. In addition, the plaintiff did not allege that the management company failed to respond although it had notice or actual knowledge about the assault immediately prior to or as it was occurring. Thus, any right of protection stemmed from the management company's contract with its employer, if from any place at all.

To that extent, this case is very similar to *Holles*; the Complaint does not set forth facts giving rise to a *de facto* special relationship between Securitas and Mrs. Bosworth. Plaintiff alleges that Securitas provided "security services" for the Mall (Compl. ¶ 4) and that the services were "insufficient" and "inadequate" on the day of the abduction. (Compl. ¶ 29.) However, Plaintiff alleges no facts that support these conclusions, such as description of the "security services," the nature of security staffing, or specific deficiencies. Plaintiff also alleges that the perpetrators "loiter[ed]" in the parking garage for an "extended period of time" (Compl. ¶ 12), were visible "on a surveillance camera at numerous times" (including once when "brandishing" a replica handgun) (Compl. ¶ 13), and that "the surveillance camera did not record a single security guard on patrol where the perpetrators loitered during their lengthy stay." (Compl. ¶ 14.) Wholly absent, however, are any allegations that Securitas personnel interacted with Mrs. Bosworth or her abductors or witnessed the events immediately before or during the abduction. In fact, we know nothing from the Complaint about where in the parking garage the abductors are captured on video, where the abduction took place, and the relative timing of each. Also notably absent is any indication that security personnel had previously interacted with or knew Mrs. Bosworth and her vulnerabilities or her abductors and their propensities.

Even if Securitas and Mrs. Bosworth were parties to a special relationship, the Plaintiff retains the burden of establishing that:

> the special relationship creates a duty of care, such as to warn and/or protect the plaintiff, as a result of the particular circumstances of that special relationship, including, the known or reasonably foreseeable danger of harm to the plaintiff from the criminal act of the third party. . . . Because the imposition of those duties does not depend upon foreseeability of harm to the plaintiff alone, consideration must be given to the magnitude of the burden of guarding against harm to the plaintiff and the consequences of placing that burden on the defendant.

*Yuzefovsky*, 261 Va. at 107, 540 S.E.2d at 139 (internal quotation marks omitted).

Numerous times, the Virginia Supreme Court has found a special relationship between the plaintiff and defendant but declined to find a duty given the absence of foreseeability of the third party's criminal act. *See, e.g., A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 221, 495 S.E.2d 482, 486 (1998) (newspaper publisher employer-delivery boy employee; insufficient pattern of prior criminal conduct); *Wright v. Webb*, 234 Va. 527, 532-33, 362 S.E.2d 919, 922 (1987) (motel business proprietor-invitee; no notice of specific danger). *But see Thompson v. Skate Am., Inc.*, 261 Va. 121, 129-30, 540 S.E.2d 123, 127-28 (2001) (skating rink business proprietor-invitee; assault "imminent probability" because business knew about specific perpetrator's violent propensity and had intervened in the recent past); *Delk*, 259 Va. at 134, 523 S.E.2d at 832. In addition, the Court has refused to "impose liability for negligence based solely upon a background of prior criminal activity on the defendant's premises or in its vicinity by unknown persons." *Thompson*, 261 Va. at 130, 540 S.E.2d at 128. In fact, to the extent that foreseeability has been considered, the Court has required "notice of a specific danger just prior to the assault" for imposition of liability. *See, e.g., Wright*, 234 Va., at 533, 362 S.E.2d at 922.

In this case, Plaintiff has not alleged facts sufficient to support a finding of foreseeability. Plaintiff alleged "hundreds" of "reported crimes" on the Mall premises in the four years preceding Mrs. Bosworth's abduction, including ten robberies and an assault with a weapon. (Compl. ¶ 7.) No abductions are alleged. Only the dates and brief titles for the alleged crimes are provided. The location or other details of the events are not indicated, which would allow comparison to the case at hand. Accordingly, "[t]his is not a case in which it was shown that the prior assaults were at or near the location of the plaintiff's assault or that they occurred frequently or sufficiently close in time to make it reasonably foreseeable that the plaintiff would be similarly assaulted." *A.H.*, 255 Va. at 222, 495 S.E.2d at 486. Similarly, Plaintiff does not allege that Mrs. Bosworth's abductors had been present at the Mall on prior occasions or had any encounters with Securitas staff, including on the day of the abduction. There is no allegation that Securitas had "specific knowledge of [the abductor's] propensity to assault . . . invitees, had intervened to inhibit that behavior in the past, and had taken steps to avoid a reoccurrence of that behavior in the future." *Thompson*, 261 Va. at 130, 540 S.E.2d at 128. *See* discussion *supra*.

Assuming, for the sake of argument, that these facts establish foreseeability, this court would not impose a duty on Securitas given "the magnitude of the burden of guarding against [injury], and the consequences of placing that burden on the defendant." *Yuzefovsky*, 261 Va. at 107, 540 S.E.2d at 139. Never has the Virginia Supreme Court required the duty of protection to be a guarantee of security. *See Taboada v. Daly Seven, Inc.*, 271 Va. 313, 323, 626 S.E.2d 428, 433 (2006) ("[T]he special relationship does not make the defendant an insurer of the plaintiffs safety."), *aff'd on*

*reh'g*, 273 Va. 269, 641 S.E.2d 68 (2007). Arguably, this is in recognition of the harsh reality that crime can and does occur despite our best efforts to prevent it. As the Kentucky Supreme Court stated:

> In spite of police protection afforded by the state it is a fact of life that citizens are sometimes assaulted, beaten, robbed, raped, or murdered at home, at work, or on the streets. This is a problem which confronts all citizens equally and for which there is often no civil relief.

*Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson*, 488 S.W.2d 355, 357 (Ky. 1972). Similarly, it is a fact of life that, despite even the best security firms' efforts, crimes will still occur. The burden of guarding against such injury, especially when that injury is at the hands of unknown third parties, is simply too great.

In one final attempt to assign liability, Plaintiff suggests that "Securitas had a duty of care commensurate with that of [the Mall Defendants]," who he claims are liable as business proprietors or landowners for the injuries to Mrs. Bosworth as an invitee. (Pl.'s Opp'n to Demurrer 2.) He relies on section 383 of the Restatement (Second) of Torts, which provides:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

Restatement (Second) of Torts § 383 (1965). This section has never been cited, much less followed, by a Virginia state court. Nonetheless, Plaintiff directs this court to an unpublished Fourth Circuit opinion, *Anderson v. Wise*, No. 93-2223, 1994 U.S. App. LEXIS 30444 (4th Cir. Oct. 31, 1994), in which the appellate court opined that, under the appropriate circumstances, Virginia would follow this section of the Restatement, in that case to "impos[e] a duty to warn on a cleaning service engaged by the owner of a store." *Id.* at *4.

In the sixteen years since the *Anderson* opinion, the Fourth Circuit's prediction has not proved true. As such, this court refuses to rely on an untested section of the Restatement to impose liability in this matter. What is more, adoption of this section would substantially expand the special relationship exception by assigning automatic liability to contractors and similarly situated parties based solely on the possessor's relationship with the plaintiff. This court expresses no opinion as to the liability of the Mall Defendants. This is contrary to the Virginia Supreme Court's unequivocal statements about the highly fact-based nature of the special relationship inquiry.

For all of these reasons, Securitas' Demurrer to Count I is sustained.

*Count V: Negligence Following Voluntary Assumption of Duty*

Plaintiff urges that, even without a special relationship, Securitas voluntarily assumed a duty to protect Mrs. Bosworth from violent crime and was negligent in executing that duty. For reasons that follow, Plaintiff's argument is unpersuasive.

"To establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by virtue of a contract." *Holles*, 257 Va. at 136, 509 S.E.2d at 497. This requirement maintains the important distinction between tort and contract: "The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society," whereas "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004).

Plaintiff alleges that Securitas "had voluntarily undertaken a duty to provide measures to protect invitees at the Mall," manifested by "the Securitas Defendants' actions in agreeing to provide and providing security measures." (Compl. ¶ 54.) Plaintiff claims that Securitas provided such services "pursuant to a contract" with the Mall Defendants. (*Id.* ¶ 4; *see id.* ¶¶ 34, 41, 54.) Since the duty alleged is not a common law duty but rather one arising by virtue of the Mall-Securitas contract, the claim of negligence as to an assumed duty cannot stand.

Were the claims to arise in tort, as the parties assumed, this court would still sustain Securitas' Demurrer. Admittedly, "[the Virginia Supreme] Court has recognized on many occasions that it is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."' *Kellermann v. McDonough*, 278 Va. 478, 489, 684 S.E.2d 786, 791 (2009). This common law principle is embodied in section 323 of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*See id.* (citing Restatement (Second) of Torts § 323 (1965)); *Didato v. Strehler*, 262 Va. 617, 629, 554 S.E.2d 42, 48 (2001) (same).

Nevertheless, Virginia has applied this principle in a very narrow set of cases. The Virginia Supreme Court has only relied on the section 323 rationale in wrongful death, wrongful birth, and one specific type of negligent driving cases. *See Kellermann*, 278 Va. at 489-90, 684 S.E.2d at 791-92 (wrongful death case; defendant assumed duty to plaintiffs' daughter when she expressly agreed to not allow plaintiffs' daughter to ride in a car with young, inexperienced drivers); *Fruiterman v. Granata*, 276 Va. 629, 646, 668 S.E.2d 127, 137 (2008) (wrongful birth case; holding evidence insufficient to find that doctor affirmatively assumed duty to render health services to father of twin fetuses afflicted with Down syndrome); *Didato*, 262 Va. at 629, 554 S.E.2d at 48 (pseudo-wrongful birth case; doctors assumed duty to tell non-patient plaintiffs the correct results of their daughter's sickle cell trait test); *Ring v. Poelman*, 240 Va. 323, 326-27, 397 S.E.2d 824, 826 (1990) (negligent driving case; driver assumed duty of care when motioning for second driver to proceed into the left turn lane, where the second driver was struck by a third vehicle); *Cofield v. Nuckles*, 239 Va. 186, 192-93, 387 S.E.2d 493, 496-97 (1990) (negligent driving case; assuming that driver assumed duty of care as to pedestrians crossing in front of his van, but holding that plaintiff did not prove breach); *Nolde Bros., Inc. v. Wray*, 221 Va. 25, 29, 266 S.E.2d 882, 884 (1980) (negligent driving case; driver's gesture could not be construed as a signal for the plaintiff to proceed across lanes of highway so driver did not assume a duty to the plaintiff). In addition, in each of the "assumption of duty" cases, the Court explicitly or implicitly required the defendant to "personally engage in some affirmative act amounting to a rendering of services to another." *Fruiterman*, 276 Va. at 646, 668 S.E.2d at 137. *See, e.g., Kellermann*, 278 Va. at 489-90, 684 S.E.2d at 791-92 (discussing facts amounting to affirmative act).

This case does not fit within this narrow set of Virginia "assumption of duty" cases. First, Plaintiff does not allege wrongful death, wrongful birth, or negligent driving, which would align this case with the aforementioned precedent. Second, the Complaint does not allege, as "assumption of duty precedent" requires, that Securitas engaged in an affirmative act amounting to the rendering of services to Mrs. Bosworth. As previously discussed, Plaintiff alleges that Securitas "had voluntarily undertaken a duty to provide measures to protect invitees at the Mall," manifested by "the Securitas Defendants' actions in agreeing to provide and providing security measures" under contract. (Compl. ¶ 54.) These "conclusory" allegations do not describe any specific affirmative act independent of Securitas' undescribed participation in a "security services" contract. Taken with the Complaint's other allegations, *see* discussion *supra*, these statements would not permit a finder of fact to conclude that Securitas undertook a common

law duty, independent of any contractual duty to the Mall, to protect Mrs. Bosworth from the criminal acts of third parties.

What is more, special relationship jurisprudence addresses at length whether a duty has been assumed voluntarily or by characteristics inherent to the relationship. *See* discussion *supra*. A new "assumption of duty" exception grounded in section 323 of the Restatement (Second) of Torts would conflict with and, thereby, confuse this special relationship precedent. Accordingly, this court declines to create a new "assumption of duty" exception to the general rule that there is no duty to protect another person from a third person's criminal acts. *Cf. Roe v. Spotslyvania Mall Co.*, No. 96-2403, 1998 U.S. App. LEXIS 7806 (4th Cir. April 22, 1998) (refusing to adopt a "new 'assumption of duty' exception to [Virginia's] general rule that invitors have no duty to protect invitees from the criminal acts of third parties").

Thus, Securitas' Demurrer to Count V is sustained.

### Count II: Breach of Contract

One procedural issue must be disposed of before addressing the substantive allegations of the Demurrer as to breach of contract. The parties dispute which documents may be considered when determining the sufficiency of the Complaint. Plaintiff brings a third-party beneficiary claim for breach of the Mall-Securitas contract, but did not attach a copy of the contract to his Complaint. Defendants' Motion Craving Oyer was denied. Since that time, Securitas has not augmented the Complaint by its own submission of the contract, though it did attach an alleged copy to its Demurrer. Plaintiffs argue that the attached contract is an "expired and incomplete document," and, moreover, should not be considered because Securitas' Motion Craving Oyer was denied. (Pl. Reply Br. 20.)

On demurrer, a court is bound to the pleading itself and "any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. R. 1:4(i)). This includes exhibits that have been made part of the pleading pursuant to a successful motion craving oyer or by stipulation. *See Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008) (documents produced pursuant to a motion craving oyer add to the record and amplify the pleadings); *Elder v. Holland*, 208 Va. 15, 18, 155 S.E.2d 369, 372 (1967) (hearing transcript becomes part of pleading when parties stipulated to its use for any purpose).

In light of these clear standards, this court will ignore the alleged copy of the contract attached to Securitas' Demurrer. Review is limited to the sufficiency of the facts pleaded within the four corners of the Complaint.