**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2140**

CARL TUEL,

Plaintiff - Appellant,

v.

HERTZ EQUIPMENT RENTAL CORPORATION,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:11-cv-00405-TSE-JFA)

Argued: October 23, 2012                   Decided: January 29, 2013

Before TRAXLER, Chief Judge, and WYNN and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Edward Kyle McNew, MICHIEHAMLETT PLLC, Charlottesville, Virginia, for Appellant. Michael James Garnier, GARNIER & GARNIER, PC, Herndon, Virginia, for Appellee. **ON BRIEF:** M. Bryan Slaughter, MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL, PLLC, Charlottesville, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This common law negligence dispute arises out of an accident that occurred on a construction site in Sterling, Virginia. Appellant Carl Tuel ("Tuel") brought suit against Appellee Hertz Equipment Rental Corporation ("Hertz") alleging Hertz owed him, as a foreseeable third party, a duty of reasonable care in performing maintenance on its leased construction equipment. Tuel alleged Hertz failed to exercise reasonable care, and, as a result, Hertz's negligence caused Tuel physical injury when the equipment malfunctioned. The district court granted summary judgment in favor of Hertz, concluding that there was no triable issue of fact as to the existence of a legal duty owed by Hertz to Tuel. Tuel now appeals from that judgment.

We conclude that Tuel has failed to put forth sufficient evidence to demonstrate that he was a foreseeable third party to which Hertz could have assumed a duty of reasonable care. We therefore affirm.

I.

In early 2009, Tuel worked as an electrician for Shine Electrical Group, an electrical subcontractor helping construct an addition to a Wal-Mart store in Sterling, Virginia. Another subcontractor, R&R Steel, LLC ("R&R Steel"), was also involved

2

in the construction, performing structural steel work at the Wal-Mart site.

During the course of its operations at the Wal-Mart site, R&R Steel rented an aerial boom lift ("boom lift" or "lift") from Hertz. The lift was operated with the use of a universal key that was used for a variety of other types of construction equipment. The lease period ran from March 3, 2009 to March 31, 2009, and was renewed through April 27, 2009.

The lease contained a provision restricting who was permitted to use the lift. The provision stated, in relevant part:

> 2. WHO MAY OPERATE THE EQUIPMENT. Only Customer and the following persons with Customer's permission ("Authorized Operators") may operate the Equipment: Customer's employer, employees, fellow employees in the course of such employee's regular employment, or persons approved by HERC in writing. . . .

J.A. 903.[1]

Neither Tuel nor his employer, Shine Electrical Group, was a party to this contract. Tuel, however, introduced expert testimony indicating that the sharing of equipment was a common practice in the industry, even in light of rental agreements to

---

[1] The rental contract refers to Hertz as "HERC" and R&R Steel is designated as the "Customer."

Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

the contrary. Tuel's expert witness stated, "this common practice of sharing rented construction equipment was known to companies that rent this equipment, even when a rental contract did not permit such sharing." J.A. 915. Tuel's expert witness, however, made this broad statement in reference to the industry as a whole, and did not provide testimony specific to Hertz.

The lease also contained a provision restricting use of the equipment after the expiration of the rental period. That provision stated, in relevant part:

> 4. CUSTOMER'S RESPONSIBILITIES. . . . The Equipment must be returned to HERC at the renting HERC branch by the Due Date specified on the Front, or sooner if demanded by HERC. Customer acknowledges that it must confirm return receipt of the Equipment by HERC at the expiration or earlier termination of this Agreement. Until such time as HERC receives actual possession of the Equipment, Customer agrees to hold said Equipment in a safe and secure manner. . . .

J.A. 903.

During the rental period, R&R Steel -- in violation of its rental agreement with Hertz -- gave Shine Electrical Group and its workers, including Tuel, permission to use the boom lift. Robert Hendrickson, president of R&R Steel, testified that he gave such permission to Tuel, Dave Fells, and other members of the Shine Electrical Group crew.

Toward the end of the lease period, the boom lift began malfunctioning. As a result, on April 21, a Hertz mechanic examined the lift on the worksite but was unable to

4

identify any malfunction. On April 27, R&R Steel's lease for the boom lift expired. Nonetheless, in violation of the rental agreement, the boom lift remained in use on April 28, when it again malfunctioned. A Hertz mechanic examined the lift for a second time, and the mechanic was again unable to identify the source of the malfunction.

After experiencing a malfunction with the boom lift for a second time, R&R Steel initially requested that the lift be removed and replaced. Once the Hertz mechanic returned for a second time and was unable to rectify the issue with the lift, however, R&R Steel decided it no longer needed the lift and did not demand replacement. Instead, on April 30, R&R Steel designated the lift "off rent" and held the lift for Hertz to pick-up and remove. Equipment designated "off rent" was generally regarded as no longer in use and typically kept in a fenced area off the jobsite.

On April 30, R&R Steel moved the lift to a designated drop-off and pick-up area that was understood on the worksite to be used for "off rent" equipment. Hertz agreed not to charge R&R Steel for the extra days R&R Steel held the lift beyond the lease period while awaiting pick-up.

On May 6, 2009, Hertz picked up the lift. Throughout the time period from April 30, when the lift was placed "off rent" and moved to the designated "off rent" location, to May 6,

5

when the lift was retrieved by Hertz, the boom lift remained at the worksite. There is conflicting testimony, however, regarding where on the worksite the lift was located on May 4, 2009, while it awaited pick-up from Hertz. Robert Hendrickson testified that the lift remained in the designated drop-off area, outside the construction site fence. Tuel testified that on May 4, 2009, the lift, although "away" from the Wal-Mart building, was still located inside the construction site fence. J.A. 206.

Although the parties dispute where the lift was located at the end of the day on May 4, 2009, the parties agree that sometime during the night of May 4, an unknown person moved the lift back into a general area inside the construction site fence. On the morning of May 5, 2009, a foreman for another subcontractor who was unfamiliar with the operation of the boom lift, asked Tuel, a trained aerial equipment operator, to move the lift out of the way. Tuel maintains that, at that time, he was unaware the boom lift had been malfunctioning. Tuel further maintains that he was also unaware the lease for the boom lift had expired and the lift was awaiting pick-up by Hertz.

Without completing the required safety check on the equipment, Tuel climbed into the boom lift's basket to move the lift. The lift basket was positioned between a cement wall and a temporary stop sign mounted on a concrete pillar, limiting the

lift's mobility. Tuel testified that he only performed a "courtesy inspection" of the lift, checking the tires and for leaked fluids, but did not perform a full safety check because the constricted placement of the lift made a full safety check of the lift's controls impossible without first moving the basket. J.A. 249, 575-76. Tuel began moving the basket, and in doing so, the lift became unresponsive to his manipulation of the controls. The lift basket dropped onto and broke the stop sign, and then crashed to the ground. At the time, Tuel's foot was stuck in a safety guard, and the force of the accident broke his foot.

In March 2011, Tuel filed suit in state court against Hertz, alleging Hertz was negligent in its duty to exercise reasonable care in maintaining the boom lift. Hertz removed the case to the United States District Court for the Eastern District of Virginia. After initial discovery, on July 19, 2011, Hertz moved for summary judgment. On August 19, 2011, the district court held a hearing on Hertz's motion. On September 16, 2011, the district court issued a Memorandum Opinion and Order granting summary judgment in Hertz's favor, finding Hertz owed no legal duty in tort to Tuel. Tuel then timely filed this appeal.

Because Tuel appeals the district court's grant of summary judgment in Hertz's favor, this court possesses jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review appeals of a district court's grant of summary judgment de novo and view the underlying facts in the light most favorable to the nonmoving party. Austin v. Clark Equip. Co., 48 F.3d 833, 835 (4th Cir. 1995). The moving party has the burden to establish "through pleadings, affidavits, depositions, and other discovery documents that there exists no genuine issue of material fact," and thus, summary judgment is appropriate. Id.

In diversity actions such as this, we are bound by governing state law. Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 260 (4th Cir. 1998). Virginia's choice-of-law rules dictate that the substantive law to be applied shall be "the law of the place of the wrong." McMillan v. McMillan, 253 S.E.2d 662, 663 (Va. 1979). Because the alleged wrong occurred in Virginia, Virginia tort law applies. But where Virginia law is not clear on a point of law, we must predict how the Virginia Supreme Court would rule, being mindful not to "surmise or suggest" an expansion of Virginia law.

8

Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993); see also Talkington, 152 F.3d at 260.

### III.

This case requires us to focus upon a narrow legal issue within the familiar tort liability expanse. Appellant Tuel argues that Hertz, as lessor of a chattel, had a duty to third persons, such as himself, to perform all repairs on its chattel with reasonable care, and that Hertz failed to fulfill this duty, thus causing his injuries.

Our starting point in addressing this case is one common to the basic principles of tort law. Under Virginia law, "a plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." Kellermann v. McDonough, 684 S.E.2d 786, 790 (Va. 2009) (quoting Delk v. Columbia/HCA Healthcare Corp., 523 S.E.2d 826, 830 (Va. 2000)) (internal quotation marks omitted).

Therefore, the first step any plaintiff must take in establishing a viable negligence action must be the allegation of a legal duty owed by the defendant to the plaintiff. If the plaintiff's allegations in his or her complaint are "legally sufficient to establish the existence of a duty, then a jury,

upon consideration of the evidence, must determine whether the duty has been performed." Kellermann, 684 S.E.2d at 790.

Here, Tuel does not argue Hertz had a common law duty to repair the boom lift, as such duties were governed by the rental contract. Rather, Tuel argues that once Hertz undertook to repair its leased boom lift, Hertz assumed a duty to third parties to perform the repairs with reasonable care. The basis for Tuel's theory of recovery is commonly referred to as the "assumption of [] duty" principle. Kellermann, 684 S.E.2d at 791. Thus, this case requires the following inquiries: (A) whether under Virginia law, a party may assume a duty to third parties to exercise reasonable care when rendering services pursuant to a contract; and (B) whether Tuel was within the category of third parties covered by the assumption of duty principle.

A.

The Assumption of Duty Principle under Virginia Law

Virginia courts have repeatedly recognized the common law principle that a duty may lie in tort where there has been an "assumption of a duty" by a party. See, e.g., Kellermann, 684 S.E.2d at 791 (identifying numerous instances where the Virginia Supreme Court has recognized the assumption of duty principle). Under this principle, "one who assumes to act, even though gratuitously, may thereby become subject to the duty of

10

acting carefully, if he acts at all." Id. (quoting Nolde Bros. v. Wray, 266 S.E.2d 882, 884 (Va. 1980)) (internal quotation marks omitted).

The Virginia Supreme Court has addressed the assumption of duty principle only in limited situations –– typically those where there is no underlying contractual obligation for the performing party to act. See generally Burns v. Gagnon, 727 S.E.2d 634 (Va. 2012) (involving whether a school principal undertook an effort to investigate a possible danger to a student); Kellermann, 684 S.E.2d 786 (involving whether a supervising adult assumed a duty to a visiting minor); Fruiterman v. Granata, 668 S.E.2d 127 (Va. 2008) (involving whether a physician affirmatively undertook the provision of healthcare to a non-patient).

Indeed, we have recognized that Virginia courts have not directly applied the assumption of duty principle in instances where a lessor undertakes repairs to a leased chattel. See Wert v. Jefferds Corp., 325 F. App'x 175, 177 (4th Cir. 2009) ("[Plaintiff] contends that, once [the lessor] undertook to service the forklift . . . , that undertaking created a duty

11

to repair the vehicle in a reasonable manner. No Virginia case explicitly recognizes such a duty . . . .").[2]

But, applying the assumption of duty principle in the tort context does not appear to be foreclosed simply because of the existence of a contract. The Virginia Supreme Court has acknowledged, "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 347 (Va. 1998). In order to do so, however, the plaintiff must show that "the duty tortiously or negligently breached . . . [is] a common law duty, not one existing between the parties solely by virtue of the contract." Id. (quoting Spence v. Norfolk & W. R.R. Co., 22 S.E. 815, 818 (Va. 1895)) (internal quotation marks omitted). Put another way, a tort action cannot be based upon a negligent breach of contract, but must arise from the breach of a duty independent from the contract. See id.

The blurred lines of contractual and tortious duties draw attention to Virginia's economic loss doctrine. Under Virginia law, lack of privity in contract will bar recovery in tort for economic losses, but will not bar recovery for injuries

---

[2] In Wert, we did not attempt to resolve whether, under Virginia law, a common law duty to act in a reasonable manner arises once a lessor undertakes repairs, but instead, we found that assuming such a duty does exist, the plaintiff failed to show a breach of that duty. 325 F. App'x at 177.

to persons or property. See Blake Constr. Co. v. Alley, 353 S.E.2d 724 (Va. 1987). Thus, courts have been careful to find a duty of care owed to third parties independent of a contract only so far as that duty protects one from personal injury or property damage. See Rogers v. Dow Agroscience, LLC, 2006 WL 3147393, at *4 (W.D. Va. Oct. 31, 2006).

Given these guidelines, discerning whether an independent duty in tort exists in the face of a contract is not always a clear exercise, and Virginia courts have taken on the task with some irregularity. In some circumstances, lower courts in Virginia have found that when a party performs an act pursuant to a contract, an independent duty may arise in tort to perform that act with reasonable care. See Boland v. Rivanna Partners, LLC, 69 Va. Cir. 308, 2005 WL 3105359 (Va. Cir. Ct. Nov. 21, 2005) (finding snow removal contractor had duty to foreseeable parties to use reasonable care in clearing parking lot of snow and ice); Gonella v. Lumbermens Mut. Cas. Co., 64 Va. Cir. 229, 2004 WL 836031 (Va. Cir. Ct. March 15, 2004) (finding roofing contractor had independent duty to homeowner to avoid creating an unreasonably dangerous condition that could cause serious personal injury). While in other circumstances, courts applying Virginia law have found no duty in tort independent from those found within the contract. See Jeannie's Jewelers, Inc. v. ADT Sec. Servs., Inc., 2012 WL 1869319 (E.D.

13

Va. May 22, 2012) (finding security company had no common law duty to provide security services under contract to jewelry store owner); <u>Bosworth v. Vornado Realty LP</u>, 83 Va. Cir. 549, 2010 WL 8925838 (Va. Cir. Ct. Dec. 20, 2010) (finding security company had no common law duty to provide security services to third-party invitees at a mall security company was servicing under contract).[3]

Virginia courts have most clearly recognized a tortious duty independent of a contract in the landlord-tenant context. <u>See</u> <u>Holland v. Shively</u>, 415 S.E.2d 222, 224 (Va. 1992) ("It has long been the law in Virginia that where a landlord enters leased premises, . . . for the purpose of making repairs, he must use reasonable care in performing the work. In order for the tenant to recover for injuries caused by a defective condition resulting from the repairs, he must show that the repairs were made in a negligent manner.") (quoting <u>Oden v. Hous. Auth.</u>, 125 S.E.2d 843, 845 (Va. 1962)).

---

[3] We note that the two negligence cases cited here involving injury to third parties, <u>Boland</u> and <u>Bosworth</u>, were each resolved in terms of foreseeability of injury to the third party. <u>See</u> <u>Boland</u>, 2005 WL 3105359, at *4 ("It was foreseeable to the Johnsons that a person entering the lot could be injured if they performed their duty negligently."); <u>Bosworth</u>, 2010 WL 8925838, at *5 ("In this case, Plaintiff has not alleged facts sufficient to support a finding of foreseeability.").

14

Further guidance is found in the Virginia Supreme Court's recognition of the Restatement (Second) of Torts. In Kellermann, 684 S.E.2d at 791, and Didato v. Strehler, 554 S.E.2d 42, 48 (Va. 2001), the Virginia Supreme Court recognized the assumption of duty principle as embodied in § 323 of the Restatement (Second) of Torts. Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Accordingly, the Restatement appears to have envisioned circumstances where a party, providing a service pursuant to a contract, may have a duty in tort to take reasonable care in performing that service to avoid physical injury to the person to whom the service is being provided. But, we find no Virginia Supreme Court case that has actually applied the assumption of duty principle in this manner.

Likewise, the Virginia Supreme Court recently recognized in Burns that the assumption of duty principle could extend, not only to parties for whom one assumes to act, but to

15

third parties as well.  See 727 S.E.2d at 643-44 ("In accordance with the principle of assumption of a duty, an actor who fails to exercise reasonable care in performing his undertaking may be subject to liability for physical harm caused not only to the one to whom he has agreed to render services, but also to a third person.").   In Burns, the Virginia Supreme Court subscribed to this principle as illustrated in the Restatement (Second) of Torts § 324A, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Id. at 644.  Using this framework, the Virginia Supreme Court in Burns held that a school principal, who is informed by one student of a possible fight involving another student, may assume a common law duty to the other student to reasonably investigate the report and provide appropriate supervision.  See id. (noting that such a duty may be assumed by a party, but remanding to the trial court to determine on the facts of the

16

case, whether or not it was in fact assumed). But again, in Burns, the services were not triggered by an underlying contract between the parties, and we find no Virginia Supreme Court case that has applied the assumption of duty principle to third parties in this manner.

As the district court pointed out, Virginia statutory modifications to the common law on negligence provide greater insight. In this regard, the assumption of duty principle has arguably been modified by the Virginia General Assembly in specific circumstances -- most germane to this case, when there is a lessor/lessee relationship concerning commercial goods. Virginia Code § 8.2A-216 provides in relevant part:

> Lack of privity between the plaintiff and the defendant shall be no defense in any action brought against the . . . lessor of goods . . . to recover damages for . . . negligence, although the plaintiff did not lease the goods from the defendant, if the plaintiff was a person whom the . . . lessor might reasonably have expected to use, consume, or be affected by the goods.

Va. Code Ann. § 8.2A-216 (West 2012). This necessarily implies that a lessor will have a defense to liability to a third party when the third party is one whom the lessor could not "reasonably have expected to use, consume, or be affected by the goods." Id. This is in accord with the general principle in Virginia tort law that one's duty extends only to "anyone who could reasonably and foreseeably be injured by one's failure to

17

use ordinary care." Khadim v. Lab. Corp. of Am., 838 F. Supp. 2d 448, 458 n.8 (W.D. Va. 2011). It is also in accord with the principle found in Restatement § 324A and espoused by the Virginia Supreme Court in Burns. But yet again, we find no Virginia case law to provide any guidance as to § 8.2A-216's possible effect.[4]

Nonetheless, based on Burns and the aforementioned body of Virginia law, two guiding principles may be drawn. Outside the landlord-tenant context, Virginia courts appear to be most receptive to finding a party assumed a duty in tort during the performance of a contract where the injured party (1) was a foreseeable third party, not in privity to the contract; and (2) suffered some physical injury, rather than mere economic loss, as a result of the actor's negligent performance.

Without clear guidance from the Virginia Supreme Court on these points, however, we assume without deciding, that Tuel's initial premise is tenable under Virginia law; that is, Hertz, once it began to render services under a lease, assumed a duty to foreseeable third parties to exercise reasonable care in performing those services to avoid physical injury.

---

[4] We find no reference to § 8.2A-216 at all in Virginia case law.

18

B.

Third Parties Covered by Hertz's Assumption of a Duty

In light of <u>Burns</u> and its adoption of § 324A, Tuel's tort theory of recovery may be viable under Virginia law as a general matter and an assumed duty may exist under such circumstances in the abstract. But that does not end our inquiry. The question remains whether under this set of facts, Tuel could be within the class of third parties to whom the assumed duty extended as required to survive summary judgment. We conclude that under the facts presented in this case, he was not.

When § 324A is unpacked, at its core it is simply a formulation of the common law tort elements in the third party assumption of duty context. Under § 324A, a party rendering services may be subject to tort liability to a third person if the party "should recognize [the services] as necessary for the protection of" the third person (duty); the third person suffers "physical harm" (damages); by way of the "failure to exercise reasonable care" (breach); if either the breach "increases the risk of such harm," the undertaking was "a duty owed by the other to the third person," or their was "reliance" on the undertaking (causation). Restatement (Second) Torts § 324A (1965).

Therefore, Hertz could be said to have assumed a duty to Tuel to exercise reasonable care to avoid physical injury in repairing the lift <u>if</u> Hertz rendered services that it <u>should have recognized</u> were necessary for the protection of an individual such as Tuel. In other words, Hertz must show Tuel has not presented facts from which a jury could reasonably conclude he was a foreseeable third party whom Hertz should have reasonably expected to be harmed by the malfunctioning lift. If Tuel has done so, then the question of whether Tuel was in fact a foreseeable third party, may be put properly before a jury. See <u>Burns</u>, 727 S.E.2d at 643 ("[W]hether a defendant owes a plaintiff a duty in tort is generally a question of law. But when the issue is not whether the law recognizes a duty, but rather whether the defendant by his conduct assumed a duty, the existence of that duty is a question for the fact-finder."). Here, however, Tuel has not put forth sufficient evidence to satisfy this foreseeability requirement. In fact, the evidence supports the converse.

It is undisputed on appeal that Hertz's technician rendered services when he twice undertook to investigate the reported malfunctioning lift. But Tuel has not put forth any evidence that Hertz either recognized or should have recognized that these services were necessary for his protection as a third party. We find a number of facts persuasive in this regard.

20

First, Tuel has not put forth any evidence Hertz possessed specific knowledge Tuel or other third parties would use the lift. In fact, Hertz explicitly contracted with R&R Steel <u>not</u> to have unauthorized third parties operate the lift. The contract provides that the only people permitted to operate the lift are "Customer[,] . . . Customer's employer, employees, fellow employees in the course of such employee's regular employment, or persons approved by HERC in writing. . . ." J.A. 903. While the contract may not be dispositive of foreseeability, Tuel must put forth sufficient evidence to permit a jury to draw the conclusion that he was in fact a foreseeable third party. He has not done so.

Tuel's concern that Hertz is attempting to "contract away" all of its common law duties is misplaced. The contract provisions between Hertz and R&R Steel do not foreclose the possibility of a plaintiff being able to show, even in light of those provisions, that Hertz was fully aware and reasonably expected others to impermissibly use its rental equipment. Tuel has simply not done so in this case.

Tuel has not provided any evidence that, despite the explicit contract language regarding unauthorized use by third parties, Hertz <u>should</u> have known third parties such as Tuel would use the lift. In his argument to the contrary, Tuel provides expert testimony indicating it is a common practice in

21

the construction industry to share rental equipment. But as the district court correctly observed, this testimony is not specific to Hertz, and also does not show that rental companies such as Hertz are aware or should be aware that this practice is so pervasive that it continues even after the expiration of the lease period. In fact, Robert Hendrickson of R&R Steel testified that he never provided any indication to Hertz that individuals other than R&R employees would use the lift.

Furthermore, the lift in this case was "off rent" and awaiting pick-up by Hertz. There is no evidence Hertz should have been aware that its equipment is used by authorized users, let alone unauthorized third parties, after the expiration of the lease. The contract itself supports the opposite conclusion in that it required R&R Steel to keep the lift in a "safe and secure manner" at the expiration of the lease period. J.A. 903.

This highlights an important distinction between this case and Burns involving the application of the § 324A regime. In Burns, the principal had specific knowledge that once he assumed the duty to investigate, whether or not he investigated with reasonable care would affect one particular third party, the student Gagnon. Here, there is no similar indication Hertz had specific knowledge that the repairs were necessary to protect either Tuel, or the class of third party workmen on the construction site, as Hertz and R&R Steel explicitly contracted

22

to prohibit third parties from using the lift and because there is no indication in the record Hertz had knowledge of any on site sharing of its equipment.

In sum, the overwhelming weight of the evidence indicates that Tuel was not a foreseeable third party that Hertz could have reasonably expected to be endangered by the lift. As noted, Hertz explicitly prohibited R&R Steel from allowing third parties to operate the lift or from operating the lift at all after the lease period. Hertz could have reasonably expected R&R Steel to comply with the terms of the contract.

IV.

Accordingly, Tuel does not have an actionable negligence claim because he has failed to show Hertz had a duty to him in tort to exercise reasonable care in servicing its leased equipment. While Hertz, in the abstract, may assume a duty to third parties when it repairs its leased equipment, Tuel has not produced sufficient evidence to show he was a foreseeable third party whom Hertz should have reasonably expected to be endangered by its repair of its equipment.

The district court's grant of summary judgment is therefore

AFFIRMED.