**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1677**

EVE M. DAVIS,

              Plaintiff - Appellant,

        v.

WALMART STORES EAST, L.P.; BRENDA GREER,

              Defendants - Appellees,

        and

STEPHANIE C. FITZGERALD,

              Defendant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Henry E. Hudson, District
Judge.  (3:15-cv-00387-HEH)

Submitted:  March 21, 2017              Decided:  May 1, 2017

Before TRAXLER and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

Jonathan E. Halperin, Isaac A. McBeth, HALPERIN LAW CENTER LLC,
Glen Allen, Virginia, for Appellant.  W. Bradford Stallard,
PENN, STUART & ESKRIDGE, Abingdon, Virginia; Terrence L. Graves,

Christopher K. Jones, SANDS ANDERSON PC, Richmond, Virginia, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Eve Davis appeals the district court's orders granting Brenda Greer and Walmart Stores East, L.P.'s ("Walmart") motions to dismiss and denying her motion for leave to file a second amended complaint. Davis claimed that the Defendants conspired with law enforcement to effect her unlawful arrest, in violation of 42 U.S.C. § 1983 (2012), and raised numerous state tort claims. For the reasons that follow, we affirm in part, vacate in part, and remand.

I.

"Because the district court dismissed [Davis'] claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, we review legal issues de novo and treat the facts alleged in the complaint as true." Nemphos v. Nestle Waters N. Am., Inc., 775 F.3d 616, 617 (4th Cir. 2015). Thus, we recount the pertinent facts in the light most favorable to Davis.

Davis sought to have a prescription for Adderall filled at a Walmart store located in Fredericksburg, Virginia. Adderall is a Schedule II controlled substance. Refills are prohibited by law and there are additional restrictions placed upon a physician's ability to issue new 30-day prescriptions. After reviewing the prescription and searching for Davis in Virginia's Prescription Monitoring Program ("PMP"), an electronic database detailing a person's prescription filling history, pharmacist

3

Brenda Greer determined that Davis had filled an Adderall prescription for the same amount just four days prior, indicating that it might not be a legal prescription. Greer contacted the physician whose signature appeared on the prescription to inquire as to its validity and left a voicemail message. Greer also called the non-emergency number for the local Sheriff's Department. She told the dispatcher that Davis "is turning in prescriptions with the same date on it for the same medicine at two pharmacies, she tried to give me one and she just got it filled at CVS . . . . Needless to say it's fake." (J.A. 147).[1]

Deputy James Harney was dispatched to the Walmart. While en route, Harney contacted Greer by telephone. During the conversation, Greer told Harney that the pharmacy needed more time to verify the status of the prescription, but that the PMP history had raised some red flags. Harney instructed Greer to stall Davis until he arrived, and to point her out to him so that he could talk to her. When Harney arrived at the pharmacy, Greer called Davis' name and signaled Harney, who immediately handcuffed Davis. (J.A. 32). Harney, accompanied by a Walmart employee, took Davis to Walmart's loss prevention office and

---

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

4

questioned her. Davis was subsequently arrested and jailed for 16 days before the Commonwealth's attorney dismissed the charge of attempting to obtain medication by fraud. (J.A. 34, 36-37). Two days after Davis' arrest, her physician informed the pharmacy that the prescription in question was valid. Greer did not relay this information to the Sheriff's Department.

## II.

First, Davis argues that the district court erred in dismissing her false imprisonment claim against Walmart. In her complaint, Davis asserted that Greer and Walmart, acting through its employees, "instigated, directed, requested, and participated in Deputy Harney's unlawful arrest of Ms. Davis whereby Ms. Davis's physical liberty was restrained and continued to be restrained . . . for a period of 16 days." (J.A. 38). On appeal, however, Davis argues that Walmart falsely imprisoned her by allowing Harney to question her in its loss prevention office with an employee present for the questioning, thereby delaying her appearance before a magistrate. "[Q]uestions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 237 (4th Cir. 2008). Accordingly, we decline to consider Davis' false imprisonment claim.

5

III.

Next, Davis argues that the court erred in dismissing her claim of intentional infliction of emotional distress (IIED). To establish liability for IIED in Virginia, a plaintiff must prove: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." Harris v. Kreutzer, 624 S.E.2d 24, 33 (Va. 2006). To satisfy the second element,

> [I]t is insufficient for a defendant to have acted with an intent which is tortious or even criminal. Rather, . . . the conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id.

Davis alleged numerous actions by Greer that formed the basis of her IIED claim. We conclude that the district court properly rejected these arguments on the ground that the alleged actions did not constitute outrageous or intolerable conduct. Accordingly, we affirm the disposition of this claim.

IV.

Davis asserts that the district court erred in dismissing her assumption of duty claim after the court concluded that Virginia does not recognize such a claim. Alternatively, Davis

6

asserts that, if no such freestanding claim exists in Virginia, the district court should have construed it as a negligence claim premised on the theory of assumption of duty.

Virginia has recognized the concept of assumption of duty as "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Kellermann v. McDonough, 684 S.E.2d 786, 791 (Va. 2009). The district court correctly found that assumption of duty is an alternate theory of the duty of care underlying a negligence claim rather than an independent claim, see, e.g., id. (stating that party "pled a cause of action cognizable in tort . . . on the theory that [defendant] assumed a duty"); Didato v. Strehler, 554 S.E.2d 42, 49 (Va. 2001) (addressing "plaintiffs' claims of negligence and assumption of duties"); Nolde Bros., Inc. v. Wray, 266 S.E.2d 882, 884 (Va. 1980) (discussing assumption of duty in evaluating negligence claim).

Regardless, we conclude Davis cannot succeed on a freestanding assumption of duty claim or a negligence claim premised on assumption of duty because assumption of duty applies only in a narrow subset of Virginia cases: "wrongful death, wrongful birth, and one specific type of negligent driving cases." Bosworth v. Vornado Realty L.P., 84 Va. Cir. 549, 2010 WL 8925838, at *7 (Va. Cir. Ct. Dec. 20, 2010) (collecting cases). Because Davis has failed to demonstrate

7

that her case falls within the narrow class of cases to which assumption of duty applies, we reject this argument.

## V.

Next, Davis argues that the district court erred in dismissing her claim that Greer and Walmart conspired with Harney to violate her constitutional rights by arresting her without probable cause. Establishing a civil conspiracy under 42 U.S.C. § 1983 requires a plaintiff to show that Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). To survive dismissal under Rule 12(b)(6), a plaintiff must plead facts that would "reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id.

We conclude that the district court properly dismissed Davis's civil conspiracy claim. Although Greer communicated with Harney and responded to some of his suggestions and requests, Davis failed to plead facts sufficient to demonstrate that Greer conspired with Harney to arrest Davis without probable cause. Accordingly, we affirm the district court's dismissal of this claim.

## VI.

Davis next asserts that the district court erred in dismissing her medical malpractice claim. To succeed on a medical malpractice claim in Virginia, "a plaintiff must establish not only that a defendant violated the applicable standard of care, and therefore was negligent, the plaintiff must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury. . . ." Bitar v. Rahman, 630 S.E.2d 319, 323 (Va. 2006).

Davis mentioned medical malpractice only fleetingly in her complaint; she referenced her negligence and gross negligence claims and sought to raise them as medical malpractice claims "[t]o the extent any of the claims . . . are subsumed by the Virginia Medical Malpractice Act." (J.A. 47). Davis' medical malpractice claim did not allege a particular standard of care or breach of that standard based on Greer's role as a pharmacist.

On appeal, Davis significantly expands this claim, discussing the applicable standard of care. However, this argument was not properly raised in the district court. Accordingly, we decline to consider it.

## VII.

Finally, Davis alleges that Greer and Walmart committed negligence per se because Greer revealed information she

9

received from the PMP to law enforcement in violation of Va. Code Ann. § 54.1-2525 and 18 Va. Admin. Code § 110-20-25(2), (4).

> The doctrine of negligence per se represents the adoption of the requirements of a legislative enactment as the standard of conduct of a reasonable person. The elements of negligence per se are well-established. First, the plaintiff must prove that the defendant violated a statute enacted for public safety. Second, the plaintiff must belong to the class of persons for whose benefit the statute was enacted, and demonstrate that the harm that occurred was of the type against which the statute was designed to protect. Third, the statutory violation must be a proximate cause of plaintiff's injury. The first and second of these elements are issues of law to be decided by a trial court, while the third element is generally a factual issue to be decided by the trier of fact.

Kaltman v. All Am. Pest Control, Inc., 706 S.E.2d 864, 872 (Va. 2011) (brackets, internal citations, and quotation marks omitted). "However, a statute setting the standard of care does not create the duty of care." Steward ex rel Steward v. Holland Family Props., LLC, 726 S.E.2d 251, 254 (Va. 2012).

A.

First, Davis argues that the district court erred in dismissing her negligence per se claim premised on Va. Code Ann. § 54.1-2525, which prohibits disclosure of confidential information from the PMP. Although Davis' complaint asserted that the statute was enacted for public health and safety, there is no indication from the face of the statute that it was

10

"enacted for public health and safety reasons," Steward, 726 S.E.2d at 254, nor is there any case law interpreting the statute in that way. Accordingly, we conclude that the district court did not err in dismissing this claim.

B.

Davis also challenges the dismissal of her negligence per se claim premised on 18 Va. Admin. Code § 110-20-25(2), (4), which states in relevant part that:

> The following practices shall constitute unprofessional conduct within the meaning of § 54.1-3316 of the Code of Virginia:
> . . .
> 2. Willfully or negligently breaching the confidentiality of a patient unless otherwise required or permitted by applicable law;
> . . .
> 4. Engaging in disruptive or abusive behavior in a pharmacy or other health care setting that interferes with patient care or could reasonably be expected to adversely impact the quality of care rendered to a patient . . . .

Davis has supported her claim that the purpose of 18 Va. Admin. Code § 110-20-25 is public health and safety, as required to establish a negligence per se claim.

With regard to Appellees' argument that Davis has not alleged a violation of § 10-20-25(4), we agree with the district court that Davis' allegations do not rise to the level of disruptive or abusive behavior by Greer. Although Appellees contend that Davis has not alleged a violation of § 10-20-25(2),

11

however, there is no dispute that Greer disclosed confidential information to law enforcement within the meaning of § 10-20-25(4). And while Va. Code Ann. §§ 32.1-127.1:03(D)(31) and § 54.1-3408.2 may ultimately immunize Greer's release of information, both sections require the release to be done in good faith. The evidence may not substantiate a claim that Greer acted in bad faith when she contacted the authorities, but we conclude that it is inappropriate to resolve this issue at the motion to dismiss stage.

Accordingly, we vacate the district court's dismissal of Davis' claim of negligence per se premised on 18 Va. Admin. Code § 110-20-25(2), and remand for further proceedings. We express no opinion about the merits of the claim. As to all other claims, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

12